(December 3, 1914.)

## W. R. WILKERSON, as Trustee in Bankruptcy, Respondent, v. MYRTLE F. AVEN, Appellant.

[144 Pac. 1105.]

COMMUNITY PROPERTY—TRUSTEE IN BANKRUPTCY—ACTION TO QUIET TITLE—STATUTORY CONSTRUCTION.

1. *Held,* under the facts of this case that the land involved is the separate property of the wife and not subject to the payment of the husband's indebtedness.

APPEAL from the District Court of the Seventh Judicial District for Canyon County. Hon. J. M. Stevens, Presiding Judge.

Action to quiet title in a trustee in bankruptcy to real estate standing in the wife's name. Judgment for trustee. *Reversed.*

Griffiths & Griffiths and Thomas D. Griffin, for Appellant.

The fact that the husband managed the investment for appellant does not constitute a presumption of community property. The husband could only hold this property in trust for his wife. (*Title Ins. & Trust Co. v. Ingersoll*, 153 Cal. 1, 94 Pac. 94; *Stickney v. Stickney*, 131 U. S. 227, 9 Sup. Ct. 677, 33 L. ed. 136; *Denny v. Denny*, 123 Ind. 240, 23 N. E. 519; *Chadbourn v. Williams*, 45 Minn. 294, 47 N. W. 812; *Carter v. Becker*, 69 Kan. 524, 77 Pac. 264; *Jones v. Davenport*, 44 N. J. Eq. 33, 13 Atl. 652.)

Upon the question of a wife's earnings constituting a part of her separate estate under an agreement with her husband, see *Dobbins v. Dexter Horton & Co.*, 62 Wash. 423, 113 Pac. 1088; *Wren v. Wren*, 100 Cal. 276, 38 Am. St. 287, 34 Pac. 775; *Gage v. Gage*, 78 Wash. 262, 138 Pac. 886.

The presumption that property acquired during marriage is community property may be rebutted. (*Stewart v. Weiser*

*Lumber Co.,* 21 Ida. 340, 121 Pac. 775; *Heney v. Pesoli,* 109 Cal. 53, 41 Pac. 819.)

It is only by giving effect to sec. 2677, Rev. Codes, that sec. 2680, which defines community property, and sec. 4479, which exempts the rents, issues and profits of the wife's separate property and her personal earnings from execution against her husband, can be reconciled. (*Thorn v. Anderson,* 7 Ida. 421, 63 Pac. 592; *Humbird Lumber Co. v. Doran,* 24 Ida. 507, 135 Pac. 66.)

Jackson & Walters, for Respondent Wilkerson.

Where separate property has by investment or otherwise, undergone changes or mutations, as in the case at bar, it is indispensable in order to maintain its separate character that the wife shall trace and identify it, and rebut the presumption that the property acquired during marriage belongs to the community. (*Hamilton Brown Shoe Co. v. Lastinger* (Tex. Civ. App.), 26 S. W. 924; *Morris v. Hastings,* 70 Tex. 26, 8 Am. St. 570, 7 S. W. 649; *Brown v. Lockhart,* 12 N. M. 10, 71 Pac. 1086; *Yesler v. Hochstettler,* 4 Wash. 349, 30 Pac. 398, and cases cited.)

At the time of the purchase of the property involved in this action appellant was a married woman living with her husband, thus raising the presumption that the property so acquired was community property, and placing the burden on the appellant to establish the contrary. (*Humbird Lumber Co. v. Doran,* 24 Ida. 507, 135 Pac. 66; *In re Niccolls Estate,* 164 Cal. 368, 129 Pac. 278.)

SULLIVAN, C. J.—This action was brought by the plaintiff as trustee of the estate of H. B. Aven, a bankrupt, to quiet title to a tract of land consisting of about eleven acres in Orchard Heights Addition to the town of Caldwell, Canyon county. The cause was tried by the court without a jury and findings of fact, conclusions of law and judgment entered in favor of the plaintiff, quieting the title in him as trustee. The appeal is from the judgment.

The principal assignment of error is that the evidence is not sufficient to support findings Nos. 3, 5, 6 and 7.

The evidence shows that the appellant, Myrtle F. Aven, was the wife of the bankrupt H. B. Aven; that they were married in the year 1893; that they lived on a homestead in Deer Flat not far from the town of Caldwell for a period of about nine years, beginning in 1894; that shortly after their marriage the appellant's father gave her $100 in cash which she invested in one cow with a suckling calf, a heifer, three brood sows and a dozen chickens, which were taken to and kept on said homestead; that during that time the husband managed, controlled and cared for said livestock and its increase, selling a part of it at times and accounting to the appellant; that the husband retained the money from the sale of the stock so sold and used the same in the operation of said farm; that after leaving the ranch in about 1903, they took some of the stock with them to Caldwell and kept it there and finally sold the last of it in 1907, some three or four years after they had left the ranch; that after the last of it was sold, a settlement was had between the husband and wife and the amount due appellant was agreed upon; that both husband and wife testified that there was a settlement between them about 1907, and according to their best recollection it was agreed that there was between twelve and thirteen hundred dollars due appellant; that they kept a book part of the time of the amount received from the sales of such property and what it cost to feed the stock; that the cost of the feed was deducted from the price the cattle, hogs, etc., brought; that no other cattle, hogs or chickens were kept on the homestead but those purchased with said $100 and their increase; that the husband began to repay the appellant in small sums; that there was an agreement between them that the appellant should have as her separate property her personal earnings which she might derive from keeping roomers and a part of what she might derive from keeping boarders. and the sums for which said property sold, less the cost of the feed they consumed.

The evidence shows that appellant opened a savings account with the Caldwell Banking & Trust Company, the

predecessor in interest of the Caldwell Commercial Bank, on July 24, 1907, and at the time she purchased the land in question, viz., December 27, 1909, she had in that savings account $726.94; that the purchase price of said land was about $1650 and in order to make a cash payment of $1000 at the time she purchased the land, she borrowed $250 from the bank on her note and her husband paid her $50 on the debt he owed her, the appellant later paying the note of $250 to the bank from her savings, and she thereafter mortgaged the land for $650, from the proceeds of which loan she paid the balance of the purchase price. It appears that her said husband signed said mortgage with her. About the time, or shortly after, of removing from the ranch to the town of Caldwell, the husband entered into some kind of merchandising and was engaged in that business up to the 30th day of January, 1912, when he was adjudged to be a bankrupt under the bankrupt laws of the United States. From the time plaintiff's said husband entered into the mercantile business until he was declared a bankrupt, his indebtedness to the bank varied from four to about eight thousand dollars. The cashier of the bank was one of the parties who made the sale of this land to the appellant and knew all about her husband's indebtedness to the bank and her savings account as kept in said bank.

Under that state of facts the question is directly presented as to whether said land was community property and as such whether the trustee in bankruptcy was entitled to take and apply the proceeds thereof in the satisfaction of the bankrupt's indebtedness.

It is provided by sec. 2676, Rev. Codes, that all property owned by the wife before marriage, and that acquired afterward by gift, bequest or descent, or that which she shall acquire with the proceeds of her separate property, shall remain her sole and separate property, to the same extent and with the same effect, as the property of a husband similarly acquired. Sec. 2679 provides that all property owned by the husband before marriage, and that acquired by gift, bequest, devise or descent is his separate property. Sec.

2680 provides that all other property acquired after marriage by either husband or wife, including the rents and profits of the separate property of the husband and wife, is community property, unless by the instrument by which any such property is acquired by the wife it is provided that the rents and profits thereof be applied to her sole and separate use. Sec. 4479 provides for exemptions in favor of a married woman and that all real and personal estate belonging to her at the time of her marriage, or to which she subsequently becomes entitled in her own right, and all rents, issues and profits thereof, and all compensation due and owing her for personal service is exempt from execution against her husband.

Said sections all construed together contemplate that the wife's separate property and the increase thereof cannot be applied to the payment of her husband's debts on execution. A bankruptcy proceeding places the estate of the bankrupt under the control of the law as effectually as it could be placed by an execution or attachment, and clearly the law does not contemplate that the property of a married woman or the rents, issues and profits thereof, can be applied by judicial proceeding in the form of a judgment and execution in the payment of her husband's debts.

The appellant's father gave her $100 in cash and she purchased with it a cow, calf, heifer, three sows and a dozen chickens. That livestock was taken upon the homestead of the appellant and her husband and it was cared for, and its increase, which must have amounted to considerable in twelve or thirteen years, was fed and nurtured on the products raised on the farm, and as we gather from the evidence, the value of the grain and hay fed the stock was deducted from the total sales, and in the settlement between the husband and wife in regard thereto, it was agreed that the wife was entitled to between twelve and thirteen hundred dollars for the money that the husband had received on such sales.

So far as the evidence shows, up to the time she purchased said land in 1909, she had saved from her own earnings with what her husband had paid her on what he owed her, about

$726, and on the day she purchased the land the husband paid her $50 on the indebtedness of between twelve and thirteen hundred dollars. At that time she borrowed from the bank $250 and applied that, together with $750 of her savings account in the bank, in the payment of $1,000 on said land. Thereafter she mortgaged said land for about $650 and paid the balance of the purchase price therefor from the proceeds of such loan.

It does not appear from the evidence that any fraud or deception was practiced on the bank or on either of the husband's creditors whereby they were induced to give him credit by reason of the appellant's savings account in said bank or by reason of her having purchased said land. There is not a syllable of evidence that tends to show any credit was given to the bankrupt under the representations either from the wife or her husband that said land or said savings account was community property or the property of the husband, and it could not become the property of the husband without some intent on the part of the wife to transfer it to him as and for his property.

In *Title Ins. & Trust Co. v. Ingersoll*, 153 Cal. 1, 94 Pac. 94, it was held that the mere acquirement of the possession of the wife's separate property by the husband and his subsequent management and control of the same, all done with her consent, does not show any intent on the part of the wife to make a gift of such property to the husband or to change its status from separate to community property; that the presumption in such a case appears to be that the property continues to be the separate property of the wife and the husband takes it in trust for his wife.

If the husband borrowed money from the wife, we fail to understand why he would not have as valid a right to pay her the money borrowed as he would to pay any of his creditors, and since it does not appear from the evidence that the husband used either her money in the bank or said land as a basis of credit in his mercantile business, the bank certainly did not give the husband any credit because of the savings deposit of the wife or the land which stood in her name.

Further than that, the bank through its cashier personally made the sale of said land to the appellant, the wife, and not to the husband, and received from her the pay therefor and he knew at the time of the sale just where the thousand dollars came from which was used in making the first payment on the land. And he also knew that the balance of about $650 was raised by giving a mortgage by the wife and husband on said land, and the wife and husband are liable for the payment of said mortgage debt. Certainly if the wife pays it out of her own money, the land ought not to be taken from her and given to the creditors of the husband. If there were any indications of fraud or a conspiracy between the husband and wife to procure credit for the husband because of the property involved, then a very different question would be presented. But everything was done openly and above-board, and the cashier of the bank knew of the husband's indebtedness to the bank and also of the wife's savings account in said bank and where she procured the money to pay the purchase price for said land.

Counsel for the trustee contends that there was such a confusion of property in this case that it works a forfeiture, and that there has been no attempt to trace the separate property of appellant or its proceeds. The evidence does not show that there was any confusion of property. The evidence shows that the husband had no cattle or hogs or chickens on said ranch—that all that were ever kept there were bred from the animals purchased by the wife with the $100 given her by her father. It is true the husband in selling the property was permitted to retain the money, with the understanding that he would account for all of it after deducting the cost of the feed and grain used in feeding such animals. There is no element of confusion in this case.

We therefore hold that the land in dispute is the separate property of the appellant and that the judgment must be reversed and it is so ordered, with directions to the trial court to enter judgment in favor of the appellant in accordance with the views expressed in this opinion.

Costs awarded in favor of appellant.

Truitt, J., concurs.