## KESTER v. HELMER et ux.

### No. 1856.

District Court, D. Idaho, S. D.

April 9, 1935.

Chapman & Chapman, of Twin Falls, Idaho, for plaintiff.

John W. Graham, of Twin Falls, Idaho, and Sam S. Griffin, of Boise, Idaho, for defendants.

CAVANAH, District Judge.

The nature of the action was stated in the opinion of the court when ruling on the demurrer to the amended and supplemental complaint [Hendrickson v. Helmer (D.C.) 7 F.Supp. 627, 628], and from an analysis there made the plaintiff as trustee in bankruptcy seeks to cancel two warranty deeds executed by the bankrupt to his wife and that the property covered by them be declared to be community property so that the bankrupt's interest may be decreed to the bankrupt's estate.

The answer of the defendants presents the issues, first, as to whether the two deeds executed by the bankrupt to his wife on May 31, 1927, and September 26, 1928, were fraudulent and made with intent to enable the bankrupt to avoid and escape his stockholder's liability of the First National Bank of Twin Falls, and, second, whether the property involved is the community property of the defendants and the bankrupt's interest therein should be decreed to the bankrupt's estate.

At the close of plaintiff's evidence, defendants moved for nonsuit and dismissal of the action upon the grounds that the bill and the evidence do not show the elements necessary to constitute fraudulent conveyance by the deeds; (a) That there was no existing creditor at the time the deeds were executed and particularly the creditor forming the basis of this suit; (b) that there was no fraud in fact or intent to defraud in the execution of the deeds; and (c) that after the conveyances were made by the bankrupt he retained sufficient assets to meet his demands, including a possible assessment on his shares of stock held by him in the bank.

The bill alleges that the deeds were fraudulently given by the bankrupt to his wife without consideration, for the purpose of attempting to escape and avoid his liability as a stockholder of the bank, and by them he conveyed properties to his wife to be her sole and separate property, and that the deeds were executed and recorded

fraudulently for the purpose of defeating and defrauding his creditors; that the bankrupt in January, 1925, became a stockholder of the bank, and prior thereto he and his wife acquired the property involved as their community property; that on the 31st day of May, 1927, and September 26, 1928, he executed the deeds, and that they were recorded on December 4 and 5, 1931, after the bank had closed its doors on December 3, 1931, that in his schedules filed in the bankruptcy proceedings the bankrupt did not include the property involved as assets of his estate; that the receiver on July 18, 1932, recovered a judgment on the assessment made against his stock by the Comptroller of $41,024.49.

The bill tenders the issue that the deeds were executed and recorded fraudulently and for the purpose of defeating and defrauding creditors of the bankrupt, and that was sufficient to require the taking of proof as to whether there was a creditor existing at the time the deeds were executed, although it is claimed that the bank, by reason of the assessment on the stock, did not become a creditor of the bankrupt's until the Comptroller had acted. As was said by the court in the opinion on the demurrer: "The liability of a shareholder in a national bank to respond to an assessment in case of insolvency as prescribed by section 64, title 12 U.S.C.A., is statutory, and, upon the failure of the bank, the rights of its creditors intervene and attach. Scott v. Deweese, 181 U.S. 202, 21 S.Ct. 585, 45 L.Ed. 822; Concord First National Bank v. Hawkins, 174 U.S. 364, 19 S.Ct. 739, 43 L.Ed. 1007; Salter v. Williams et al. (D.C.) 219 F. 1017. It is for the benefit of the bank's creditors represented by the receiver of the bank, and is conditional and contingent, and the right to sue does not obtain until the Comptroller has acted, which is the basis of the suit. McClaine v. Rankin, 197 U.S. 154, 25 S.Ct. 410, 49 L.Ed. 702, 3 Ann.Cas. 500. The bank being insolvent and having creditors at the time it closed, the individual liability of its stockholders existed to such debts, contracts, and engagements of the bank."

■ The statute of Idaho requires that before the conveyance of property is fraudulent as to creditors there must appear that there was an existing creditor at the time of the alleged fraudulent transfer and that the transfer was made with the intent to delay and defraud such creditor, as section 54-906 provides: *"Transfers in Fraud of Creditors.*—Every transfer of property, or charge thereon made, every obligation incurred, and every judicial proceeding taken, with intent to delay or defraud any creditor or other person of his demands, is void against all creditors of the debtor and their successors in interest, and against any person upon whom the estate of the debtor devolves in trust for the benefit of others than the debtor." This takes us to a consideration of the evidence as to whether there existed a creditor of the bankrupt at the time the deeds were given, and whether the transfers were made with intent to delay or defraud such creditors. Prior to the time the bankrupt became a stockholder in the bank, he and his wife acquired the real property involved as their community property, and the deeds in question were executed more than four years before the bank was closed and more than five years before the Comptroller acted in levying the assessment on the bankrupt's stock. The basis of the claim that there existed creditors of the bankrupt at the time the deeds were executed by reason of his liability and the assessment on his shares of stock in the bank is not tenable under the evidence, for such liability arises solely out of the act of the Comptroller in making the assessment and at the time he makes his order. Salter v. Williams (D.C.) 219 F. 1017; McClaine v. Rankin, 197 U.S. 154, 155, 25 S.Ct. 410, 49 L.Ed. 702, 3 Ann.Cas. 500; Delano v. Butler, 118 U.S. 634, 635, 7 S.Ct. 39, 30 L.Ed. 260. "Individual liability of a stockholder can only be enforced by his [Comptroller's] order. * * * It is indispensable to the bringing of a suit against a stockholder. In other words, the liability dates from the order of the Comptroller." Rankin v. Barton, 199 U.S. 228, 232, 26 S.Ct. 29, 30, 50 L.Ed. 163. While it is alleged generally in the complaint that the deeds were given to defraud creditors of the bankrupt, no other creditor of his appears from the evidence to have been in existence at the time the deeds were executed, except the claim that his stock liability by some future assessment made the bank a creditor of his at the time the deeds were executed, but, as the conclusion is reached that the stock liability dates from the date of the order of the Comptroller, neither creditors of the bank or the bank was a creditor of the bankrupt at the time of the execution of the deeds, and the offer of plaintiff of evidence as to the in-

solvency of the bank at the time the conveyance was made would not create stock liability under the rule thus announced, but, however that may be, the evidence fails to establish insolvency of the bank or that the bankrupt had knowledge of or believed it at the time the deeds were executed. Insolvency is one of fact, and is a question of values of assets as against liabilities, and, to arrive at the insolvency of a bank at a given time, its assets and unimpaired capital and surplus, together with its liabilities, are the principal factors to be considered, and losses subsequently occurring by reason of economic or changed conditions generally, such as market values of bonds, or change of financial conditions of borrowers and depreciation of value of their property or destruction of and depreciation of value of assets of the bank over years of operation, and consideration of losses not yet known and which have not been liquidated, do not establish insolvency of the bank at the time the deeds were given. The values of the assets of the bank are what they were worth in the market place at the time in question, no competent evidence appears as to what they were on March 10, 1925, May 1, 1927, September 20, 1928, nor at any other time pertinent to the issues.

As to whether the bankrupt had knowledge and believed that the bank was insolvent back in May, 1927, and September, 1928, when the deeds were executed, we find that the evidence not only fails to show insolvency at those times, but that the national bank examiners' reports disclosed the contrary and that the bankrupt bought additional stock in the bank of $11,000 in 1927, $7,500 in 1929, and $1,500 in 1930, thereby increasing his investment and possible stock liability to 110 shares of stock, which indicates that he did not believe the bank to be insolvent. Insolvency at the time the deeds were executed must have been known to him.

The further thought is pertinent in determining whether the conveyances from the bankrupt to his wife were fraudulent at the time that they were made, Did the bankrupt have sufficient remaining property to satisfy his debts? If so, then the transfers were not fraudulent. It is not enough to show only an existing creditor, for it must further be shown that the conveyance left the debtor with insufficient assets to satisfy his obligations. This general principle is recognized by the Supreme Court

of Idaho in a case where a conveyance was made by husband to his wife, where it is said:

"A man may, in good faith, convey his property to his wife or anybody else, and it is no concern of his creditors, if he still retains sufficient property to satisfy their legal demands. * * * In order to set aside a conveyance as fraudulent, there must be fraud on the part of the vendor and injury to the creditor. * * *

"* * * Neither a gift from a man to his wife nor a conveyance to another without consideration, is prima facie fraudulent. C.S. § 5435. Evidence is required from which an intent to defraud may be inferred. The transfer was not fraudulent, if the husband had sufficient remaining property to pay his debt, and respondent was under no necessity at the trial to prove that H. T. McMillan's property was sufficient, when the gift was made, to pay the debt, in the absence of evidence on behalf of appellant that the property mortgaged to secure the payment of the debt was not sufficient for that purpose.

"That to satisfy a judgment for the debt, together with costs and attorney's fees, the property was subsequently sold under foreclosure and bought in by the creditor for a sum less than the judgment, resulting in the deficiency judgment, is of no consequence, if the property retained by H. T. McMillan was, when the payments for the land and its gift were made, sufficient to satisfy the then existing debt. The validity of such a transfer does not depend on subsequent events. [Cases cited.] And no different rule may be invoked because the transfer was made to the wife, for this court held, in Bank of Orofino v. Wellman, 26 Idaho, 425, 143 P. 1169, that —'The transfer of property by a husband to his wife in this state stands in the same relation to his creditors as any other transfer or conveyance.'" McMillan v. McMillan, 42 Idaho, 270–275, 245 P. 98, 99; Snell et al. v. Prescott et al., 48 Idaho, 783, 285 P. 483.

No evidence appears tending to show that the bankrupt did not have remaining sufficient property to meet his then obligations and even an unanticipated and unknown assessment which could not have exceeded $31,000, made some five years after the conveyance. In fact, it is fair to conclude from the evidence to the contrary.

264

Further, it is urged that there was no intent on the part of the bankrupt to convey the property to his wife, as there was no delivery of the deeds and that he treated it as his own. The complaint alleges that the bankrupt executed the deeds and conveyed the property to his wife as her sole and separate property, and that allegation, together with the deeds in evidence, imports a delivery. Further testimony of the statement of Graham introduced by the plaintiff, that he, at the request of the bankrupt, delivered the deeds to Mrs. Helmer by handing them to her, shows a delivery.

It is also urged that the bankrupt treated the property as community property after the conveyance was made by exercising control and management. However, the complaint alleges that the conveyance of the property to the wife was as her sole and separate property, which could, under the allegations of the complaint, only be avoided by fraud at the time the deeds were executed and any subsequent events and conduct of the husband, without the acquiescence of his wife, or acts of hers not showing intent to transfer the property to him, would not create a presumption that the property was his separate or community property. Wilkerson v. Aven, 26 Idaho, 559, 144 P. 1105; Miller v. Brode, 186 Cal. 409, 199 P. 531; Dale v. Dale, 87 Cal. App. 359, 262 P. 339; Bias v. Reed et al., 169 Cal. 33, 145 P. 516. The Supreme Court of Idaho has said: "The fact that the husband at times had the management and control of the property purchased with the moneys of the wife with her consent creates no presumption that the property was either his separate property or that it was community property." Chicago Portrait Co. v. Sexton, 49 Idaho, 128, 286 P. 615. The deeds from the bankrupt to his wife contain specific declarations that the property is conveyed as her separate property, and those recitals are strong evidence of his intention to relinquish his claim on it, and can only be rebutted by evidence that the conveyance was procured by fraud.

A married woman is not estopped by acts done by her husband in respect to her separate property without her knowledge and consent. One of the necessary elements of an estoppel to be invoked by the plaintiff is that the bank acting upon the acts of the husband was misled to its injury by the conduct of the wife against whom it is here sought to be invoked. City of Cœur d'Alene v. Spokane & E. I. Railroad Co., 31 Idaho, 160, 169 P. 930. This requirement of the law is not sustained by the evidence, for the mere fact that the bankrupt paid taxes, collected rent, and at times directed the operation of the property did not mislead the bank in extending any credit forming the basis of the present action, and under such circumstances do not warrant the invoking of the doctrine of estoppel by plaintiff against the wife.

The evidence presented by the plaintiff failing to establish the cause of action pleaded in the complaint, therefore the motion for nonsuit is granted.