[Civ. No. 14162. Second Dist., Div. One. Apr. 26, 1944.]

Estate of WILLIAM L. WOOTEN, Deceased. JESSIE H. WOOTEN, Appellant, v. LESLIE WOOTEN, Respondent.

Austin & Austin for Appellant.

W. Blair Gibbens for Respondent.

DORAN, J.—Appellant, the surviving widow of William L. Wooten, deceased, petitioned the superior court for a decree determining the interests in the estate of said deceased and for an order to set apart as a homestead certain real property upon which appellant had filed a declaration of homestead during the lifetime of said decedent. The court decreed that one-third of the real property and cash in said estate be distributed to appellant on final distribution of the estate, together with certain household furniture and furnishings; that a particular house "and the land on which the same is situated and necessarily used in connection therewith" be "carved out" of certain described real property and set apart to appellant as the surviving widow for and during the term of her life as a probate homestead. Two-thirds of the real property, subject to the probate homestead, and two-thirds of the cash was ordered to be distributed to the children of decedent upon final distribution of the estate. It is from this judgment that appellant has appealed.

The court found that all the real property and cash de-

scribed in the inventory and appraisement of the estate was the separate property of decedent at the time of his death; that although appellant filed a declaration of homestead against certain of the real property, the decedent did not join therein or consent thereto. But the court found that decedent, in his lifetime, had with appellant occupied one of three houses on the parcel against which the declaration of homestead had been filed, and that the other two houses located on the said property were rental units. The court set apart, as the probate homestead, the house which had been so occupied by decedent and appellant, together with the land on which the same was situated, and necessarily used in connection therewith, as above mentioned.

Appellant contends that the evidence shows an oral agreement to convert the separate property of William H. Wooten into the community property of William H. Wooten and appellant, as his wife; that in any event, if a finding that the property was not community property is proper, then appellant should be given a lien on the property of the estate for advancements from community funds and appellant's private funds in the payment of bills for repairs, additions to properties, taxes and encumbrances during the married life of decedent and appellant. The court expressly found that said property had not been converted into community property, by mutual agreement or otherwise; and that while the property had been improved and repaired during decedent's marriage to appellant, the costs of any improvements, repairs or liens upon said property were paid from the separate property of decedent.

The real property in question was acquired by William L. Wooten prior to his marriage to appellant, and stood in his name both at the time of his marriage to appellant and at his death. Testimony of conversations between Mr. Wooten, the decedent, and appellant, which might tend to indicate an intention to convert the property into community property, was given only by appellant. This testimony was controverted by that of respondent. Numerous checks offered in evidence by appellant with regard to payment of taxes were drawn upon a joint bank account of appellant and her husband, the deceased. Respondent testified that the taxes on decedent's separate properties were paid from rentals received from the said properties.

There was put in evidence a statement dictated by appellant showing that rentals from certain of the separate property brought in a profit of $2,964.14, after repairs and taxes were accounted for; and when asked if it were not true that all expenses were deducted from rents that came in, appellant said, "I don't know how to answer that." Appellant also made the following answer immediately thereafter, to a similar question. "Q. BY MR. BAYLEY: Isn't it a fact, Mrs. Wooten, that when these repairs or changes were made, that in general they were deducted from the rent that came in from the places? A. We hoped they would be, if we got our rents, but we did not always get them." In general, there is sufficient evidence in the record from which to infer that repairs, expenses and taxes upon the properties were paid out of rentals or out of profits from rentals. There is one instance in which a house, erected upon community property, was moved by appellant and decedent to premises which were the separate property of decedent. The original cost of this house was $460.

As to an agreement to convert decedent's separate property into community property, appellant cites *Marvin* v. *Marvin*, 46 Cal.App.2d 551 [116 P.2d 151]. In that case there was strong evidence of an executed oral agreement, where funds for the purchase and for payment of taxes and assessments were paid out of community funds. Moreover, in that case the wife's testimony on these matters was corroborated. It is also there stated (at p. 557): "Whether or not these statements and the conduct of the deceased during this long period indicated an intent on his part to transmute any separate interest he may have had in this property into a community interest with his wife was, at least, a question of fact for the trial court." The other authorities cited by appellant upon this point are all consistent with the rule thus enunciated; and the evidence in the present case is sufficient to support the finding that there was no agreement to transmute the separate property interest of Mr. Wooten into a community interest with his wife. In fact, the evidence in the record might well be held insufficient to support a finding that there was such an agreement.

Appellant contends that if this court should hold that the real property in question was not transmuted into community property, then the court should order reimbursement to the widow of all community funds and her separate

funds used in improving and adding to the property, paying taxes, liens and encumbrances. The trial court found, ''That it is not true that the private funds of petitioner and decedent during marriage were commingled together or were used to improve the said real property or to pay mortgages or liens or otherwise against the said real estate, but it is true that the cost of any improvements, repairs or liens made on said property were paid from the separate property of decedent.'' It has already been pointed out that there was sufficient evidence from which to infer that repairs and expenses upon the properties were paid out of rentals received from the separate estate of decedent. █ As already indicated, the evidence as to the source of the funds from which taxes were paid is conflicting; and the court's finding in this respect may not be disturbed. █ The evidence did not unequivocally establish the fact that any encumbrances or liens were paid off with appellant's separate funds or out of community funds. The question of the source from which any such items against the property were paid was one of fact for the decision of the trial court.

█ Although there is no specific finding as to the house which was moved upon the husband's separate property, there is at least a basis for an implied finding that this house became a part of the separate estate and that appellant intended this result. It is to be noted that this house was moved upon Mr. Wooten's separate property after the sale of the property on which the house had originally stood; and the funds received from the sale of the latter property were deposited in the joint bank account of appellant and decedent. Moreover, it is also plain that any funds or any property here involved, which might be held to be community property or the separate property of appellant, were applied to the separate estate of Mr. Wooten with the consent of appellant. █ The rule allowing reimbursement to the wife of community funds expended upon the separate estate of the husband appears to apply only in cases where such application or expenditure has been made without the wife's consent. This is plainly indicated by the language in *Wheeland* v. *Rodgers*, 20 Cal.2d 218 [124 P.2d 816], in *Dunn* v. *Mullan*, 211 Cal. 583, 590 [296 P. 604], and in *Provost* v. *Provost*, 102 Cal.App. 775 [283 P. 842]. It has in effect been stated that the basis for allowing such reimbursement is to prevent a

husband in his control of the community property from taking advantage of his position by divesting the wife of her interest. (See *Provost* v. *Provost, supra,* p. 781.) The Provost case, *supra,* also clearly indicates that the wife may agree to the application of community property to the separate estate of the husband and that the community property should become a part thereof. The finding of the court above quoted may not be said to lack support in the evidence.

 The bank account, the funds from which appellant contends are separate property, was an account standing in decedent's name at the time of his death. The funds therein had originally been in an account opened by decedent and appellant in the form of a joint account, as "William L. *or* Jessie Hamblin Wooten." Later, the word "or" was crossed out and the word "and" inserted in the title of the account in the bank book. Thereafter the funds in the account were divided equally between decedent and appellant, one-half being placed in the name of each party. The trial court found that the funds in question were the separate property of decedent. Under the circumstances, the question of the character of the funds standing in decedent's bank account at his death was one of fact (see *Wheeland* v. *Rodgers, supra,* at p. 222); and there is sufficient evidence to support the finding of the court.

 The house set apart by the court as a probate homestead is one of three houses standing on a lot 66 feet wide by three hundred feet deep. This house is numbered 1928, and has a frontage of 27 feet 6 inches, facing on the street. There is a second house, numbered 1926, beside the first mentioned house, with a driveway between the two houses. A third house, numbered 1928½, is in the rear of the first house; and there is a garage that extends between the first and third houses. Number 1928 was occupied by appellant and Mr. Wooten as their home. This house is a little larger than the other two; but none of them are large. As to the use of the surrounding grounds, appellant testified that, "Everybody on the place uses everything, clothes lines, and so forth." The other two houses were used as rental units. The lot also contains a chicken house and some fruit trees. Upon sufficient evidence, as above mentioned, the court found this property to be the separate property of decedent. In 1938 appellant had recorded a declaration of homestead upon the entire

premises mentioned; but decedent did not join therein. It does not appear that decedent ever consented to the declaration of homestead in question, and the court found that decedent did not consent thereto. Under the circumstances, the probate homestead set aside by the court was one under the provisions of section 661 of the Probate Code.

Appellant contends that the judgment setting aside the probate homestead is uncertain and does not define the rights of the parties, and will lead to untold litigation if allowed to stand. As already mentioned, the court decreed that the particular house known as 1928 El Segundo Boulevard, "and the land on which the same is situated and necessarily used in connection therewith, carved out of" the described premises, be set apart as a probate homestead. Upon the facts presented, the decree of the court is too uncertain to permit a definite determination of the extent of the probate homestead, and hence casts doubt upon the title to the entire property involved. Whether it is possible to carve out a probate homestead from the parcel of land in question, without setting apart the entire parcel as a homestead, need not here be determined. That portion of the judgment which purports to set apart a probate homestead to appellant must be reversed upon the grounds of uncertainty in the terms thereof.

That portion of the judgment which determines the respective interests in the estate here involved is affirmed; but that portion thereof which purports to set apart to appellant a probate homestead is reversed, and the cause is remanded for a retrial of the issues involving the probate homestead.

York, P. J., and White, J., concurred.

A petition for a rehearing was denied May 17, 1944, and appellant's petition for a hearing by the Supreme Court was dismissed on June 15, 1944, pursuant to stipulation.