**277 P.2d 278**

Dollie Rena GAPSCH, Plaintiff-Respondent,

v.

Edward Henry GAPSCH, Defendant-Appellant.

No. 8208.

Supreme Court of Idaho.

Nov. 24, 1954.

Cox, Ware & Stellmon, Lewiston, for appellant.

Earle W. Morgan, Lewiston, for respondent.

**THOMAS, Justice.**

Appellant, hereinafter referred to as husband, and respondent, hereinafter referred to as wife, were married on October 20, 1951. There were no children born of the marriage.

On the 6th day of August, 1953, the wife filed suit for divorce on the ground of extreme cruelty and sought a division of the community property. The husband answered, denying the allegations of the complaint and filed a cross-complaint for divorce on the ground of extreme cruelty. Upon issues thereafter joined, the court entered a judgment and decree on April 27, 1954, granting the wife a divorce on the ground of extreme cruelty and denying a divorce to the husband; the court also made disposition of the property which will be discussed hereinafter in some detail. From the judgment and the whole thereof the husband appealed on April 30, 1954.

On June 11, 1954, upon motion of the wife, the trial court made an order requiring the husband to pay the wife attorneys' fees and costs on appeal, as well as support money. From this order the husband also appealed on June 14, 1954.

The husband has made some thirty-three assignments of error many of which are overlapping and inclusive. We will not discuss separately each error assigned but will consider and dispose of all fundamental questions raised thereby. In brief, it is the contention of the husband that the evidence is insufficient to support a decree of divorce to the wife on the ground of extreme cruelty and that it will not support the division of property as made by the court; finally, that the order for attorneys' fees, costs and support money on appeal is not justified by and is inequitable under the facts and circumstances.

■ There is no merit to the contention that the evidence is not sufficient to support a judgment of divorce to the wife on the ground of extreme cruelty under sec. 32-605, I.C.

■ It would serve no useful purpose to detail and elaborate on the substantial and competent evidence of acts and a course of conduct on the part of the husband which, if believed by the trial court although denied by the husband, would inflict grievous mental suffering upon the wife. Howay v. Howay, 74 Idaho 492, 264 P.2d 691; De Cloedt v. De Cloedt, 24 Idaho 277, 133 P. 664; Donaldson v. Donaldson, 31 Idaho 180, 170 P. 94. Moreover, the trial court, not this court on appeal, resolves the conflicting evidence and determines the weight, credibility and inferences to be drawn from such evidence, Sellars v. Sel-

lars, 73 Idaho 163, 248 P.2d 1063; furthermore, where there is substantial and competent, although conflicting evidence of such acts and conduct, the findings of the trial court will not be disturbed. Howay v. Howay, supra.

At the time of the marriage the husband had a bank account in Portland, Oregon, in the sum of $11,000; a checking account in a bank in Vancouver, Washington, amounting to $727.82; he owned an acreage and home at Vancouver, the furnishings therein and some farm implements thereon, a Chrysler automobile, a small motorboat, a Dodge pickup and a promissory note in the principal sum of $1,000, signed by the Alexander Lumber Company.

At the time of the marriage of said parties the wife had in a Seattle bank a checking account of $622.73 and a savings acount of $512.58; also prior to marriage she had a life insurance policy with a cash surrender value of $2647.66 and owned a lot in Kansas City, Missouri, which she later sold for $324.45.

After the marriage the parties lived in Vancouver, Washington, until the latter part of March, 1952; on or about March 20, 1952, the husband and one Sam J. Alexander formed a partnership and, as partners, purchased the Lewis-Clark Garage, Inc., located at Lewiston, Idaho. At all times thereafter the parties to this action have resided in Lewiston, Idaho.

Subsequent to the marriage all the funds of the husband in the Portland bank were withdrawn and are fully accounted for. $5,000 of this sum was used to purchase DuPont stock which was later sold for $4,195.58 and the proceeds thereof deposited in the garage account and later withdrawn therefrom and paid on the purchase price of the garage; $1,400 was used to purchase a Plymouth car which was subsequently sold for $1,450; this latter sum, together with $300 advance rent on the Vancouver property, $145 received from the sale of a motorboat and $5,624.72, was deposited in the Vancouver account; the aggregate of the deposits of the separate funds and the proceeds from the sale of separate property of the husband, together with the $727.82 in this account at the time of the marriage, was $8,247.54; the wife deposited in the Vancouver account $3,735.31. Both parties checked upon the account for practically the first six months of their marriage.

The garage was purchased for $35,000; Mr. Alexander personally paid $15,000 of the purchase price. In addition to paying the $4,195.58 from the proceeds of the sale of the DuPont stock on the purchase price, the husband transferred title to a Chrysler car, which he owned prior to marriage, to the partnership which sold it for $3,054.42 and applied the proceeds of this sale on the purchase price; the husband also sold some separate personal property in Vancouver and purportedly applied $1,000 thereof on the purchase price; these payments so applied are not disputed; moreover, no part

of these items was drawn out of the Vancouver account. The balance of the $15,000 paid by the husband on the purchase price, that is, the sum of $6,750, was drawn out of the Vancouver account. What portion of this latter sum is the separate property of the wife is disputed.

The partnership agreement expressly sets forth that the husband contributed 4/7ths of the capital necessary for the business and is entitled to 4/7ths of the assets and profits thereof, and that Alexander contributed 3/7ths of the capitol and has a 3/7ths interest in the assets and profits; however, the balance of the purchase price in the sum of $5,000 was paid through a loan of $20,000 secured by a chattel mortgage executed by the partners, individually and as partners, on April 1, 1952; $15,000 of the loan was placed in the partnership as working capital.

On April 3, 1952, the parties to this action opened a joint checking account in a Lewiston bank and deposited therein substantially all of the husband's $750 monthly salary checks and a few of the salary checks of the wife who worked at the garage for several months. There was also deposited in this account the $75 monthly rental which the husband received from his Vancouver property; $552.42 received from the sale of Conrad Bruce stock which was payable to both parties but purchased with the separate funds of the husband; some money which represented the balance of the proceeds of the sale of personal property of the husband at Vancouver; $1,540.05 representing the proceeds of the sale of a Dodge pickup which the husband owned prior to the marriage; $324.45 representing the proceeds of the sale of a lot in Kansas City, Missouri, which the wife owned prior to their marriage.

Immediately prior to the institution of the divorce action there was a balance in excess of $2,500 in the Lewiston account. $2,250 of this amount was drawn out of the account by the husband on July 9, 1953, at a time when the parties were having marital troubles; the husband did not deposit his salary checks for the last six months of 1953 in the account; none of the money from the Lewiston account was ever used in the business.

Both parties conceded and the court found that the funds deposited in the Vancouver bank were from the separate funds of each party and some from the profits and income of the separate property of the husband; the court specifically found that the wife deposited $3,735.31 of her separate funds therein and that the whole of this sum went into the purchase of the garage business. The husband contends that the court erred in this respect because it is asserted the record shows the husband paid toward the purchase of the business $6,750 drawn on the Vancouver bank from his separate funds; $4,195.58, the proceeds of the sale of DuPont stock; $3,054.42, proceeds of the sale of a Chrysler car, and $1,000 payment on an auction sale of his

personal property, aggregating $15,000; that at the most $2,415.42 of the separate funds of the wife included in the $6,750 drawn on the Vancouver account could be applied on the purchase price.

During the marriage, up to one month following the purchase of the business, as of April 1, 1952, the only income of the parties was $300 advance rent on the Vancouver property and $50 profit from the sale of the Plymouth car; hence, substantially all expenses of living and other numerous and miscellaneous withdrawals from the Vancouver account, as disclosed by the record, would be from the separate funds of the wife if the husband's position is correct. It is the duty of the husband to support the wife and there is no presumption that the wife's separate funds are used for community expenses. Hampshire v. Hampshire, 70 Idaho 522, 223 P.2d 950, 21 A.L.R.2d 1159; Heslip v. Heslip, 74 Idaho 368, 262 P.2d 999. It was not claimed that her separate funds were used to support the community. Under the record the trial court correctly found and concluded that $3,735.31 of the separate funds of the wife deposited in the Vancouver bank was there when the $6,750 was withdrawn and applied on the purchase price and was used in purchasing the business.

While the husband exercised some management and control over such funds of the wife, perhaps with her consent, no intent on the part of the wife to make a gift thereof to the husband or to change its status is claimed, shown or presumed. On the contrary, the presumption obtains that such property continues to be her separate property and the husband takes it in trust for her. Wilkerson v. Aven, 26 Idaho 559, 144 P. 1105.

The court found that the $300 advance rent from the separate property of the husband deposited in the Vancouver bank was community property which also was used to purchase the business and that one-half of this sum belonged to the wife. The husband contends that the rents and profits of the separate property of the husband under Washington law are and remain his separate property. The husband neither alleged nor proved the law of Washington. He asserts, however, that the court may take judicial notice of the laws of Washington. This court will not take judicial notice of the laws of another state. In the absence of allegation and proof of the law of another state it is presumed to be the same as the law of Idaho. Johnson v. Falen, 65 Idaho 542, 149 P.2d 228; Nicholas v. Idaho Power Co., 63 Idaho 675, 125 P.2d 321; Owen v. Taylor, 62 Idaho 408, 114 P.2d 258; Mason v. Pelkes, 57 Idaho 10, 59 P.2d 1087, and cases cited therein. Under the laws of Idaho the rents and profits of the separate property of the husband are community property. Sec. 32–906, I.C. The husband further, contends that rents and profits in any event mean

net profits, not gross profits. This court has so held, Malone v. Malone, 64 Idaho 252, 130 P.2d 674; however, there is no evidence in the record that the rent money does not represent net profit. There is no merit in the contention that the court erred in awarding one-half of the $300, that is, $150 of the advance rent, to the wife as her community interest therein.

The court found that the profit of $50 on the sale of the Plymouth car, the separate property of the husband, constituted community property and awarded one-half of it to the wife. The husband urges that the difference between the purchase price and the sale price of the car, that is, $50, does not constitute a profit within the purview of the statute, sec. 32–906, I.C. The statute expressly provides as follows: "Rents and profits as used in this chapter shall mean income only."

As a general rule, the natural enhancement in value of separate property during coverture does not constitute community property; however, to the extent an enhancement in value is due to community efforts, labor, industry or funds, it falls into the community. 41 C.J.S., Husband and Wife, § 479, b., p. 1015. Again, as a general rule, though not absolute, a so-called profit or gain from the sale of separate property occasioned by a natural enhancement in the value of such property, constitutes a part of the separate estate. 41 C.J.S., Husband and Wife, § 479, d., p. 1016. See also In re Barnes' Estate, 128 Cal.App. 489, 17 P.2d 1046; Hill v. Hill, 82 Cal.App.2d 682, 187 P.2d 28.

The enhanced value of the car was not due to the employment of community effort, labor, industry or funds but was a natural enhancement due to the ordinary course of events. The proceeds of the sale thereof, including the profit of $50, remained the separate property of the husband. The award of $25, representing one-half of such profit, to the wife as her community share is erroneous.

At the time of the marriage the husband was indebted to a former wife, under the terms of the divorce decree, in the sum of $9,115.72, secured by a lien upon his Vancouver property; he was obligated to pay his former wife $150 a month on such indebtedness. During the present marriage such monthly payments were made out of the joint checking account of the parties amounting to $3,150, of which $635.22 represented interest and $2,514.78 principal. The court found that the said $2,514.78 was community property of the parties which had been applied to the reduction of the mortgage indebtedness against the separate property of the husband and awarded one-half thereof or $1,257.39 to the wife as her community interest therein and a charge against and an interest in the separate property of the husband in Vancouver, Washington. This finding and ruling is also assigned as error.

As a general rule where the separate property of the husband is improved or his equity therein enhanced by community funds the community is entitled to be reimbursed from such separate estate unless such funds used for improvement or enhancement are intended as a gift. The claim for reimbursement has been held to be in the nature of a charge or an equitable lien against such separate property so improved or the equity of the husband therein enlarged. It would appear that the measure of the compensation generally is the increased value of the property due to the improvement; in instances where his equity therein has been increased through the application of community funds to the payment of the debt thereon the measure should be the amount by which such equity is enhanced. Provost v. Provost, 102 Cal. App. 775, 283 P. 842; In re Wooten's Estate, 64 Cal.App.2d 96, 148 P.2d 33; Burch v. Rice, 37 Wash.2d 185, 222 P.2d 847; Farrow v. Ostrom, 16 Wash.2d 547, 133 P. 2d 974; Jones v. Davis, 15 Wash.2d 567, 131 P.2d 433; Conley v. Moe, 7 Wash.2d 355, 110 P.2d 172, 133 A.L.R. 1089; Salisbury v. Meeker, 152 Wash. 146, 277 P. 376; 41 C.J.S., Husband and Wife, § 510(5), p. 1081; 11 Am.Jur., Community Property, secs. 39 & 40, p. 199. There is nothing in the record to indicate that the wife intended, or the husband claims, the application of community funds to the payment on a separate obligation of the husband was a gift and no such presumption exists. The reason back of the rule announced in the decisions above set forth is generally to the effect that the husband has the management and control of the community funds by statute (as he does in Idaho, sec. 32–912, I.C.) and that he must not be permitted to use such authority so as to become a weapon to be used by him to deplete, if not destroy, the community property and at the same time enhance the value of his separate property. To permit such could well defeat the salutary and primary objects intended under the community property law. We hold that the court correctly found and ruled that community funds in the sum of $2,514.78 expended to reduce the principal of the mortgage indebtedness on the separate property of the husband are and remain community property of the parties and in the nature of a charge or an equitable lien against the separate property of the husband. The character of the $635.22 interest also paid on the mortgage debt of the husband but which the court did not divide between the parties is not before this court for determination on the record and we express no opinion thereon.

The trial court found that the funds deposited in the joint checking account of the parties in the Lewiston bank were handled and treated as and constituted the community funds of the parties. The source of the funds making up the account has been hereinabove detailed. Approximately $11,000 of the funds which went into this account was unquestionably community funds of the parties; approximately $2,100 thereof was

separate property of the husband and approximately $325 the separate property of the wife; the funds were treated and handled as community funds during a period of some fifteen months; substantially all withdrawals therefrom were made by the wife, primarily for normal and usual living expenses. After the parties had serious marital difficulties in July, 1953, the husband withdrew $2,250 from the account and thereafter for the next six months did not deposit his salary check in the account. Immediately prior to filing the complaint the court, upon application of the wife, issued an order restraining the husband from disposing of or transferring the said $2,250 and further restrained him from transferring or disposing of any other community property or funds.

 The evidence supports the finding that at the time of the trial the husband had on hand the $2,250 which he withdrew from the Lewiston bank shortly before the action was filed and which the court, by order, restrained him from transferring or disposing of. It also supports the finding that he had on hand at the time of the trial a large portion of his salary for the months of July through December, 1953, none of which he had deposited in the bank account; the court awarded the wife one-half of the $2,250 withdrawn from the bank, or $1,125, and also one-half of the husband's salary for the six months, less the sum of $1,550 which, under order of the court, he had paid in monthly payments to the wife; this amounted to $700. The award of these sums, aggregating $1,825, to the wife as her community interest therein was correct.

 The husband further asserts that the court erred in finding and ruling that the joint checking account in Lewiston was the community property of the parties. The wife contends that all funds in the Lewiston bank were commingled and regarded and treated as community funds. The conflicting contentions presented a conflict to be resolved by the trial court. In re Lissner's Estate, 27 Cal.App.2d 570, 81 P.2d 448.

Where the parties have not only commingled, blended and confused, but treated, regarded and handled their separate funds and community funds in their bank account as one fund, it all becomes community. Lawson v. Ridgeway, 72 Ariz. 253, 233 P.2d 459, 29 A.L.R.2d 518; Porter v. Porter, 67 Ariz. 273, 195 P.2d 132; Laughlin v. Laughlin, 61 Ariz. 6, 143 P.2d 336; Smith v. Buss, 135 Tex. 566, 144 S.W.2d 529; Bales v. Farley, 107 Cal.App.2d 642, 237 P.2d 686; Falk v. Falk, 48 Cal.App.2d 762, 120 P.2d 714; In re Woods' Estate, 23 Cal.App.2d 187, 72 P.2d 258; Miller v. Brode, 186 Cal. 409, 199 P. 531; Jacobs v. Hoitt, 119 Wash. 283, 205 P. 414. See also 41 C.J.S., Husband and Wife, § 489a., p. 1032; 11 Am. Jur., Community Property, secs. 41–44, pp. 200–202; 5 Cal.Jur., sec. 16, p. 298; 3

Cal.Jur. Ten-Yr.Supp., sec. 40, p. 524. The evidence will support the finding and ruling of the court both with reference to the community character of the Lewiston bank account and the withdrawal and withholding therefrom by the husband.

The court found that the husband and wife purchased a 4/7ths interest in the garage and that the wife had a total investment therein of $6,410.31, consisting of $3,735.31 separate funds, one-half of the advance rent and the profit from the sale of the Plymouth car, her community interest being $175, and an additional $2,500 community interest in the garage. The court arrived at this $2,500 additional community interest by finding that the husband and wife borrowed $5,000 to complete the payment of the 4/7ths interest in the business. The evidence shows that the husband and Alexander borrowed the $5,000 to pay the balance of the purchase price and an additional $15,000 for operating capital and that they executed a note for $20,000, secured by a chattel mortgage on the equipment in the garage; each signed individually and also as partners. The wife did not sign either instrument nor was any part of the purchase price paid with money borrowed by the wife nor because of any credit extended to her. The $5,000 was borrowed upon the credit of the husband's separate property interest in the partnership property, as well as the interest therein of Alexander; it was his separate property as was the property purchased therewith. Stewart v. Wei-

ser Lumber Co., 21 Idaho 340, 121 P. 775; Wilkerson v. Aven, 26 Idaho 559, 144 P. 1105; Printz v. Brown, 31 Idaho 443, 174 P. 1012; Hogevoll v. Hogevoll, 59 Cal.App. 2d 188, 138 P.2d 693; In re Abdale's Estate, 28 Cal.2d 587, 170 P.2d 918; Dyment v. Nelson, 166 Cal. 38, 134 P. 988. See also 3 Cal.Jur.Supp., sec. 47, p. 535. The court erred in awarding the wife one-half of the $5,000 as her additional community interest in the garage.

The court also found that the parties had a total investment in the garage of $20,000; that the wife's investment, both separate and her share of the community, aggregated $6,410.31 or 32.052% interest; that the net value of the business at the time of the trial was $45,000 and that her 32.052% of the 4/7ths interest of the husband and wife was $8,241.94. Upon this basis the court awarded a total interest of $8,241.94 to the wife.

At the time of the trial the business was still indebted in the sum of $12,500, representing a balance on the original loan of $15,000 for working capital. After the complaint was filed and prior to the trial the husband had put an additional $2,000 in the busniess. The net income of the business for 1952 was $30.57 and for the first eleven months of 1953, $687.87.

An accountant, a witness for the wife, testified that in August, 1953, for the purpose of determining the value of the business as he saw it, he was furnished monthly balance sheets and profit and loss

statements; that he did not check them through the books nor did he trace any items; without more, and over objection, he testified he figured the value of the business as a going concern to be approximately $45,000. This constitutes the substance of his entire testimony. The opinion he reached is speculative and conjectural and without substantial basis and is not supported by the undisputed evidence in the record. For aught that is disclosed by the record the net value of the business does not exceed, if it actually equals the purchase price thereof; hence, it is not necessary to nor do we pursue this matter further.

 The evidence does not support a finding that the wife had a partnership interest in the business; it does support a finding that her separate funds in the sum of $3,735.31 and interest in community funds (one-half advance rent in the sum of $150), aggregating $3,885.31 were used in the purchase of the property. Where a business is begun with both community and separate funds it generally constitutes community and separate property in the proportion or ratio in which the contributions have been made by the two estates. In re Caswell's Estate, 105 Cal.App. 475, 288 P. 102; Jacobs v. Hoitt, 119 Wash. 283, 205 P. 414. Moreover, the wife is entitled to be reimbursed for such sums and entitled to an equitable lien against the husband's separate interest therein. 41 C.J.S., Husband and Wife, § 510(4), (5), (6), pages 1080, 1081, 1084.

 The wife's separate funds in the sum of $3,735.31 were invested toward the purchase of the business on April 1, 1952 by the husband. For an equitable division, interest at the statutory rate on said $3,735.-31 so invested should be allowed from the date of the decree. Sec. 32–714, I.C.

 Finally, it is urged by the husband that the order of the district court made on June 11, 1954, requiring him to pay the wife $500 attorneys' fees and $100 costs on appeal, as well as $200 on or before the 15th of June, 1954, and a like sum on the fifteenth day of each and every month thereafter until final determination of the matter on appeal, or the further order of the court, as support allowance, and providing therein that the support allowance be charged to moneys due the wife from the husband under the decree, is a manifest abuse of discretion vested in the district court and that hence it should be set aside. Sec. 32–704, I.C., provides in pertinent part as follows:

"While an action for divorce is pending, the court may, in its discretion, require the husband to pay as alimony any money necessary to enable the wife to support herself * * *, or to prosecute or defend the action."

The divorce action herein is still pending, sec. 12–606, I.C.; moreover, the order of the trial court for allowance of attorneys' fees, costs and support money is an appealable order, sec. 13–201, I.C.; Brashear v. Brashear, 71 Idaho 158, 228 P.2d 243; Callahan v. Dunn, 30 Idaho 225, 164 P. 356.

■ The statute, sec. 32–704, I.C., vests in the district court original jurisdiction in a proper case to require the husband during the pendency of an appeal from a judgment in a divorce action to pay the wife, as alimony, moneys necessary to support herself during the pendency of such appeal and to either prosecute or defend the action. Ex parte Cole, 68 Idaho 257, 193 P.2d 395; Vollmer v. Vollmer, 43 Idaho 395, 253 P. 622; Hay v. Hay, 40 Idaho 624, 235 P. 902; Enders v. Enders, 34 Idaho 381, 201 P. 714, 18 A.L.R. 1492; Callahan v. Dunn, 30 Idaho 225, 164 P. 356; Galbraith v. Galbraith, 38 Idaho 15, 219 P. 1059. The question of whether it is necessary to order the payment of support money, costs and attorneys' fees on appeal is addressed to the sound discretion of the trial court and its order or decision therein will not be reversed on appeal in the absence of an abuse of such discretion. Ex parte Cole, supra; Hay v. Hay, supra; Morrison v. Morrison, 38 Idaho 45, 221 P. 156.

■ The wife, in support of her motion for an order for support money, costs and attorneys' fees on appeal, made a showing that she was without any funds whatever to support herself and also at that time in poor health; that all the personal funds of the wife, as well as the community property, were in the sole and exclusive possession of the husband. It was further disclosed that the decree of divorce was rendered on April 27, 1954, and, among other things, provided therein that the husband should pay to the wife within three days of the service of copy of the decree upon him the sum of $2,500; that three days later and on April 30, 1954, the husband filed notice of appeal and a cash supersedeas bond in the sum of $5,000, which latter sum the husband asserts he borrowed. It is further disclosed that from August, 1953, to February, 1954, the husband earned and collected in salary the sum of $5,250 at the rate of $750 per month, that he collected a salary for March and April aggregating $1,000, and that in July of 1953 he withdrew from the Lewiston bank the sum of $2,250. The affidavits in support of the motion for attorneys' fees, taken in connection with the affidavits filed in opposition thereto, indicate that the husband had the financial resources to pay such sums as the court ordered, and the showings likewise indicate that the wife's circumstances, means and health were such that it was necessary if she were to defend the action on appeal that she receive from the husband the necessary and required funds. Upon the showing made, justice and public policy require that the wife be given and afforded an opportunity to defend such action on appeal and we cannot say that the district judge abused his discretion in the allowance of attorneys' fees for services to be rendered by her counsel in connection therewith, nor that $500 is not a reasonable fee under the showing made. The order of the trial court allowing counsel fees in the sum of $500 is affirmed. In view of the disposi-

tion we have made herein, that portion of the order allowing costs need not be further considered, and the provisions in the order allowing the wife $200 per month support money during the pendency of the appeal to be charged against the moneys due her from the husband under the divorce decree likewise need not be further considered.

In conformance with the views herein expressed the judgment should be modified to award to the wife as her sole and separate property the sum of $3,735.31, together with interest thereon at the statutory rate from April 27, 1954, the sum of $3,232.39 [1] as her one-half interest in the community property, and $500 attorneys' fees.

The case is remanded to the trial court with directions to amend the findings of fact and conclusions of law and modify the decree to confrom to the views herein expressed; in all other respects, the judgment is affirmed.

Costs to respondent.

PORTER, C. J., and GIVENS, TAYLOR and KEETON, JJ., concur.

This opinion was written and agreed upon prior to the death of THOMAS, J., on November 22, 1954.

[1]. ½ advance rent ($300) $ 150.00
 ½ payment on lien on husband's
 separate property 1257.39

½ money drawn from bank but
 on hand 1125.00
Bal. of ½ of salary not deposited but on hand 700.00
 $3232.39