437 P.2d 624

**Anne E. TOLMAN, Plaintiff-Appellant,**

v.

**Emerson A. TOLMAN, Defendant-Respondent.**

**No. 9907.**

Supreme Court of Idaho.

Feb. 16, 1968.

---

H. N. Jewell, Twin Falls, for appellant.

Kramer, Walker & Plankey, Twin Falls, for appellee.

McQUADE, Justice.

Appellant Anne E. Tolman married respondent Emerson A. Tolman August 22, 1959. No children were born. By complaint filed April 28, 1965, appellant instituted the present action for divorce on grounds of extreme cruelty, and for an equitable division of community property. There was no prayer for alimony. Respondent counterclaimed, asking the divorce be decreed in his favor for appellant's extreme cruelty to him.

The district court granted divorce in favor of respondent and awarded no property to appellant. This is an appeal from that judgment.

We have decided the district court committed no error with respect to the question of divorce. However, we have determined the court's refusal to award any property to appellant under the circumstances was erroneous, and we remand the action for further proceedings on that issue.

█ Although the evidence suggests neither party was blameless, respondent's evidence concerning appellant's continual consumption of alcohol to excess; her nagging and refusal to perform wifely duties and to care for his two daughters by prior marriage; adequately support the court's divorce award. Thus, we find here no abuse of discretion.[1]

Concerning the parties' community property, respondent introduced substantial competent evidence that E. A. Tolman, Inc., a trucking business originally capitalized with respondent's separate property, had not appreciated in value during the parties' marriage. Testimony of the corporation's accountant and of its bookkeeper adequately support the district court's determination that the company had no retained net profits earned since the parties' marriage, but, rather, it had sustained a large loss.

█ We must reject appellant's contention that the company's assets had been so commingled with community property as to become community assets. Respondent presented separate records and bank accounts for the business and for the community. He, the corporation's accountant, and its bookkeeper each testified that whenever respondent paid with corporate funds for a personal purchase, the expense was charged against a debt owed him by the corporation for loans he had made to it. And the corporation's accountant testified as follows:

"Q Mrs. Waegelin, during your association with this corporation, at all times has it been kept and treated as a separate business entity through the books and records?

"A Yes."

Appellant's contention that this Court should pierce the corporate veil of E. A. Tolman, Inc., is immaterial to the issues involved in this action. Since there was no community interest in that company, it does not matter if the company be considered a corporate entity or a sole proprietorship. Therefore, we find no error in the district court's determination that all assets of E. A. Tolman, Inc., were the separate property of respondent.

During the marriage, respondent had used some community funds for improvements on some of his separate real property, a house which was the parties' home-

---

1. See Idaho R.Civ.P. 52(a); cf. Ferguson v. Ferguson, 91 Idaho 33, 415 P.2d 676 (1966); Parks v. Parks, 91 Idaho 420, 422 P.2d 618 (1967); Piatt v. Piatt, 32 Idaho 407, 184 P. 470 (1919).

stead. Due to the peculiar nature of this house (it stood near a shop used in the trucking operation), a real estate appraiser testified on respondent's behalf that the house would not appeal to a normal buyer. Thus, he said, the property's sale value had not appreciated. For appellant, a real estate appraiser testified a highest and best use buyer—another trucking business— would pay about $14,000 extra because of the improvements. However, he was not aware of any sales of such property in the area within the preceding twenty years. The district court found the community had no economic interest in this property because the improvements had not enhanced its market value.

Respondent contends the enhancement of market value is the sole test for determining increased value due to improvements made with community property (and so the extent of community lien on the property). Appellant contends the correct test should be whether there is a benefit to respondent, the property's user.

In Gapsch v. Gapsch,[2] this Court said: "As a general rule where the separate property of the husband is improved or his equity therein enhanced by community funds the community is entitled to be reimbursed from such separate estate unless such funds used for improvement or enhancement are intended as a gift. The claim for reimbursement has been held to be in the nature of a charge or an equitable lien against such separate property so improved of the equity of the husband therein enlarged. It would appear that the measure of the compensation generally is the increased value of the property due to the improvement; in instances where his equity therein has been increased through the application of community funds to the payment of the debt thereon the measure should be the amount by which such equity is enhanced."[3]

Had this property been ordered sold, general market values before and after improvements may have been a pertinent measure of the community's interest. But where as here respondent has been awarded the homestead for his own occupancy and enjoyment, the "increased value of the property" to him as user, his personal enrichment, is the obviously proper standard of enhanced value. If respondent had contracted for the improvements on credit and later extinguished his debt from community funds (the record does not indicate whether respondent initially financed the alterations or paid immediately in cash), the satisfaction of that debt in effect would have "enhanced" his "equity," a test of his obligation to the community under the quoted rule in the *Gapsch* case.

There was some competent evidence concerning the property's enhanced value to respondent due to community financed improvements: that another trucker would pay about $14,000.00 extra because of those improvements. The district court, however, apparently was not concerned with that evidence since the court thought the test of respondent's obligation to repay the community was increased market value of the property. The court found:

"The addition [to the house, financed with community funds] cost money but because of the age of the home and the proximity of it to the trucking business it's [sic] value was not enhanced because of the improvements."

On remand, therefore, the district court shall determine the value of the improvements to respondent, the property's owner and user. Since even expenditures for necessary repairs or maintenance have value to the user of a house, the amount of community funds which respondent spent on preservation and improvement would be relevant concerning his enrichment and so the extent of his obligation to the community. Having determined the amount by

**2.** 76 Idaho 44, 277 P.2d 278, 54 A.L.R.2d 416 (1954).

**3.** Id. at 53, 277 P.2d at 283.

which respondent has been enriched from community funds with respect to improvements to the house, the court shall consider an equitable division.

There were several assets of relatively small value on which the district court made no finding concerning their nature as separate or community. Included among these were: a claimed community lien of $419.00 for payments on a separate debt of respondent; a possible community interest of about $3,200.00 in a loan made by respondent to E. A. Tolman, Inc., from funds perhaps attributable to his labor; and cash surrender values for insurance policies, stipulated at $817.75.

■ The district court's conclusion thirteen provides: "The remaining community property, if any, should be awarded to the defendant [respondent]." But we do not consider this conclusion a clear indication that the district court in forming his judgment considered the nature of the assets discussed in the previous paragraph. We recognize, as respondent urges, that respondent was ordered to pay all community obligations and that he paid approximately $5,000.00 on appellant's behalf for temporary support and attorney's fees, which payment must be satisfied first from community property.[4] Nevertheless, on remand the district court should find specif-ically whether such miscellaneous assets are community property and, if so, should consider their equitable division.

Appellant urges that the incorporation articles of E. A. Tolman, Inc., provide that she was to receive three hundred shares of its capital stock (stated value $100 per share). She has never received these shares and she asked the district court to order respondent to set them over to her. Respondent asserted the articles' provision was a mistake, and that it was supposed to direct that she receive three shares.

■ Though certainly it appears that appellant is entitled to receive at least three shares, the district court made no findings and entered no conclusions of law concerning these shares of stock. Appellant objected to this failure in her motion to amend the findings and conclusions, but that motion was denied. On remand, the court shall resolve the issues presented by appellant's contentions in this regard.

Judgment on issue of division of community property reversed in part and remanded for further proceedings. Otherwise, judgment affirmed.

Costs to appellant.

TAYLOR, C. J., and SMITH, McFADDEN and SPEAR, JJ., concur.

---

4. See I.C. § 32–708.