[No. 19618.   Department Two.   April 23, 1926.]

SPOKANE STATE BANK, *Respondent*, v. FRANK L. WELLS *et al.*, *Appellants*.[1]

[1] HUSBAND AND WIFE (58, 83)—COMMUNITY PROPERTY—PRESUMPTION—LIABILITY — GUARANTY BY HUSBAND. Where a married man's stock subscription was partly paid for by his separate property and the balance was not ultimately paid from any separate property, it will be presumed that the balance of the stock was community property at the time it was acquired; and hence his guaranty of a corporate debt would be a community obligation.

Appeal from a judgment of the superior court for Spokane county, Oswald, J., entered July 3, 1925, upon findings in favor of the plaintiff, in an action upon promissory notes, tried to the court. Affirmed.

*F. A. McMaster*, for appellants.

*Fred S. Duggan*, for respondent.

PARKER, J.—The plaintiff bank commenced this action seeking recovery against the defendants, Wells

¹Reported in 245 Pac. 401.

Investment Company, Frank L. Wells, and the community consisting of Wells and wife, upon two promissory notes. A trial in the superior court for Spokane county resulted in findings and judgment thereon awarding to the bank recovery as prayed for, from which the community, consisting of Wells and wife, have appealed to this court, seeking reversal of the judgment in so far as it awards recovery against the community.

The Wells Investment Company was duly organized as a corporation in the year 1913, with an authorized capital stock of $150,000. Wells then subscribed for $70,000 of the capital stock, his wife, her father and her mother severally subscribing for the remainder of the capital stock. These persons were the incorporators. Wells then became the president and general manager of the corporation and has so remained ever since. At the time of subscribing for the $70,000 of the capital stock, Wells paid to the company thereon, with his separate property or funds, the sum of $37,000, leaving a balance of $33,000 due upon the subscription. The evidence calls for the conclusion that at that time Wells did not possess separate property in excess of the $37,000 paid upon his stock subscription, anywhere near equal in value to the balance of $33,000 due upon the subscription. On November 30, 1923, and January 12, 1924, respectively, the two notes here sued upon were executed and delivered by the Wells Investment Company to the plaintiff bank, Wells signing the name of the company by himself as president. At the same time Wells personally indorsed each of the notes on the back thereof as follows:

"For value received I hereby guarantee the payment of the within note, and waive protest, demand and notice of non-payment thereof.        F. L. Wells."

It is contended, in behalf of the community, that the evidence shows that the $33,000 balance due upon Wells' $70,000 stock subscription was some time later ultimately paid for with his separate property or funds, and that therefore there was no such community interest in the corporate stock as warranted Wells binding the community by his guarantee indorsement on the notes. We are inclined to view the evidence as failing to show that the balance due upon the stock subscription was paid with property or funds belonging to him as his separate property. That question of fact, however, we need not here decide, since we are of the opinion that it is not a controlling consideration in our present inquiry.

[1] As we understand counsel, it is conceded that this guarantee indorsement became a binding obligation of the community, if the community had some substantial property right in the stock of the corporation, because the guarantee indorsement by Wells upon the notes must then be regarded as having been made in the interest of the community. Our decisions are clear that such is the law. *Horton v. Donohoe-Kelly Banking Co.*, 15 Wash. 399, 46 Pac. 409, 47 Pac. 435; *Allen v. Chambers*, 22 Wash. 304, 60 Pac. 1128; *Floding v. Denholm*, 40 Wash. 463, 82 Pac. 738; *Williams v. Hitchcock*, 86 Wash. 536, 150 Pac. 1143.

It has become the settled law that the community or separate status of property is determinable as of the time of its acquisition. The following are some of our decisions supporting this view: *Katterhagen v. Meister*, 75 Wash. 112, 134 Pac. 673; *Rawlings v. Heal*, 111 Wash. 218, 190 Pac. 237; *In re Sanderson's Estate*, 118 Wash. 250, 203 Pac. 75; *Jacobs v. Hoitt*, 119 Wash. 283, 205 Pac. 414; *Zintheo v. Goodrich Rubber Co.*, 136 Wash. 196, 239 Pac. 391.

We have rendered some decisions, wherein we have recognized ultimate payment of the purchase price with community funds or separate funds as having some evidentiary bearing upon the question of the original acquisition of the property being by the community or by one or the other of the spouses separately. But we have never held that the ultimate payment of the purchase price, where credit has been extended therefor, is within itself a controlling consideration in an inquiry as to whether or not the acquisition of the property was by the community or by one or the other of the spouses separately.

In this case, we have nothing pointing to the acquisition of the whole of the stock by Wells' $70,000 subscription therefor as his separate acquisition, other than his payment at the time of $37,000 towards the subscription with his separate property or funds and the claimed later ultimate payment of the balance with his separate funds. Plainly, we think this does not overcome the almost conclusive presumption here present that Wells' subscription for the stock was to the extent of $33,000 thereof a subscription for the community upon its credit. We conclude, therefore, that the guarantee indorsement made by Wells upon these notes was in the interest of the community, because of its stock interest in the Wells Investment Company as a corporation.

The judgment is affirmed.

TOLMAN, C. J., MITCHELL, MAIN, and MACKINTOSH, JJ., concur.