[No. 24152. Department One. November 28, 1932.]

THE CAPITAL NATIONAL BANK OF OLYMPIA, *Respondent,* v. LEONA M. JOHNS, *Appellant,* MODERN UTILITIES COMPANY *et al., Defendants.*[1]

[1]Reported in 16 P. (2d) 452.

*Frank C. Owings,* for appellant.
*Thos. L. O'Leary,* for respondent.

HOLCOMB, J.—This appeal is by the divorced wife of defendant J. L. Johns from that part of the judgment entered below against her in the sums set forth in the judgment and making the same a lien against all community property owned by her and her former husband prior to their divorce.

There is no dispute as to any of the facts. The controversy here is as to the application of the law to the facts.

Defendant J. L. Johns and appellant were married September 7, 1912, and were husband and wife until October 27, 1930, on which date a preliminary decree of divorce was entered in which appellant was granted a divorce from J. L. Johns and a division of their property interests, made by them on October 16, 1930, was approved and confirmed. The final decree of divorce confirming the interlocutory decree was duly entered in the divorce action on April 28, 1931. By the terms of the property settlement, certain property, specifically described, was set over to appellant as her separate property, and the remainder of the prop-

erty belonging to the community was set over to the husband. Part of the property set over to the husband were shares of stock of Modern Utilities Co. theretofore owned by them as a community.

The complaint in this case states two causes of action, the first being upon a promissory note dated October 27, 1930, alleging a balance due on the principal of $350 and interest as provided in the note. The second is upon a promissory note for a balance due of $5,888.52 principal and interest as stipulated therein. There is further pleaded with both causes of action a writing, guaranteeing any and all indebtedness up to $12,500 owing by Modern Utilities Co. to respondent, dated May 15, 1929, signed by certain others and J. L. Johns. All of the signers of the writing so pleaded were stockholders in the company at the time of its execution, and the stock of J. L. Johns was then community property of himself and appellant.

Respondent had full knowledge and notice of the property settlement when executed, and of the preliminary and final decrees of divorce on the dates they were entered. Appellant first learned, shortly before the institution of this action and in December, 1931, that J. L. Johns had executed the written guaranty while they were still husband and wife.

On May 15, 1929, when the guaranty was made, the indebtedness of Modern Utilities Co. to respondent was $734. That was increased on May 21, 1929, to $10,000, and on June 20, 1929, to $12,500. Thereafter, upon maturity and nonpayment in full of the notes, various renewals for varying amounts were made by the makers, namely: on July 22, 1929, August 21, 1929, September 19, 1929, October 18, 1929, November 19, 1929, December 20, 1929, January 18, 1930, February 17, 1930, March 17, 1930, April 15, 1930, May 14, 1930, June 13, 1930, July 15, 1930, August 11, 1930, Sep-

tember 11, 1930, October 11, 1930, and on November 10, 1930.

The renewal note given November 10, 1930, one of the two notes sued on herein, was for $8,600. The other note sued on was originally in the sum of $2,500, evidenced by a note dated April 29, 1930. On May 1, 1930, there was another note for $1,400. On May 29, 1930, these two notes were combined in the sum of $3,900, which obligation was renewed on June 28, 1930, July 28, 1930, August 28, 1930, September 27, 1930, and October 27, 1930. In all instances, the new notes were marked ''Renewal.''

Appellant first attacked the complaint by motion and demurrer. The motion was to require respondent, among other things, to elect whether it would sue upon the promissory notes described in its two causes of action, or would sue upon the instrument of guaranty; and in the event of the denial of the motion, that respondent be required to state separately its causes of action on the notes and upon the instrument of guaranty. The demurrer was upon the grounds that there was a defect of parties defendant; that several causes of action had been improperly united; that the alleged causes of action stated in the complaint did not state facts sufficient to constitute causes of action. The motion was denied and the demurrer overruled by the trial court.

[1] It is first contended by appellant that the court erred in overruling her demurrer, for the reason that an action on each note could not properly be joined in an action on the written guaranty. A number of authorities from outside jurisdictions are cited by appellant, which we do not consider apt, since this case is controlled by our Rule of Practice II, 140 Wash. xxxv (Rem. 1927 Sup. § 308-2), and our decisions.

Appellant contends that the rule in question is not

intended to abrogate Rem. Comp. Stat., § 296, providing that causes of action so united must affect all the parties to the action. That part of the rule, *supra,* material to this matter reads:

"No action or proceeding shall be defeated by the nonjoinder or misjoinder of parties. New parties may be added or substituted and parties misjoined may be dropped by order of the court at any stage of the cause as the ends of justice may require."

While the rule does not purport to abrogate the statute, its purpose was to enable parties to be brought in that were in any wise affected by the controversy, to avoid a multiplicity of suits and to determine all subjects of the controversy, in so far as proper, in one action.

Nor was it error to deny the motion and overrule the demurrer, for reasons which we shall presently see.

The writing alleged by respondent and admitted by appellant to have been executed reads:

"Olympia, Washington, May 15, 1929.
"For and in consideration of the sum of One Dollar to me in hand paid by THE CAPITAL NATIONAL BANK OF OLYMPIA, the receipt of which is hereby acknowledged, and for other valuable consideration, the undersigned hereby jointly and severally guarantee unconditionally at all times payment of any and all indebtedness or liability, direct or contingent, irrespective of its character, regularity, enforcibility or validity, now owing or which may hereafter be owing or become due from the MODERN UTILITIES COMPANY OF OLYMPIA, A CORPORATION, to THE CAPITAL NATIONAL BANK OF OLYMPIA, its successors or assigns, to the extent of TWELVE THOUSAND FIVE HUNDRED DOLLARS, ($12,500.00), whether or not such indebtedness or liability or any part thereof be otherwise guaranteed or secured, or whether additional guarantors be added hereto after delivery without notice to or the consent of the undersigned, and irrespective of any other circumstances; and upon the

failure to pay promptly the full amount thereof when due, by acceleration or otherwise, by the said MODERN UTILITIES COMPANY OF OLYMPIA the undersigned jointly and severally promise to pay such indebtedness or liability on demand, together with interest thereon, and also all expense of every kind incurred for the collection thereof or in the enforcement of this agreement, and in case suit is instituted to enforce this agreement, or any claim arising thereunder, to pay such additional sum as the court shall adjudge reasonable as attorneys' fees in such suit, to THE CAPITAL NATIONAL BANK OF OLYMPIA, or to the holder or holders of said indebtedness or liability, or any part thereof, the undersigned hereby waiving notice of the acceptance of this guaranty and of any and all indebtedness or liability at any time covered by the same. This is intended as a continuing guaranty and requires no notice to the undersigned, and shall remain in full force and apply to all present and future matters and transactions (not exceeding in its extent, at any one time, the amount above stated) until written notice of its discontinuance as to any further indebtedness or liability shall be received by THE CAPITAL NATIONAL BANK OF OLYMPIA, its successors or assigns, and in case suit be brought to enforce this guaranty or any claim arising thereunder, it is hereby agreed that at the option of said bank or the holder hereof, the venue of such suit may be laid in Thurston County, Washington.

> "Virgil Baker
> "H. L. Whiting
> "W. Wilson
> "J. L. Johns
> "L. E. Titus."

Appellant vigorously contends that the above writing is to be designated as nothing but a continuing guaranty of any and all indebtedness owing respondent by Modern Utilities Co. up to $12,500. Authorities are cited from outside jurisdictions to that effect.

We are bound by the rule of decision in this state, under which the writing set out is not only a continuing

guaranty, but is also, in effect, an original obligation of the signatories thereto. Although the words "continuing guaranty" were used in the instrument, each and every one of the signers, jointly and severally, promise to pay and guarantee unconditionally at all times, payment of any and all indebtedness up to $12,500.

We have, in several instances, held such written instruments to be original obligations, notwithstanding they were called guaranties. *Schoening v. Maple Valley Lumber Co.*, 61 Wash. 332, 112 Pac. 381; *Hardinger v. Hainsworth*, 111 Wash. 590, 191 Pac. 755; *Appleford v. Snake River Mining, Milling & Smelting Co.*, 122 Wash. 11, 210 Pac. 26, 29 A. L. R. 268. See, also, 28 C. J. 889 and 1012.

Hence, it is obvious that all or any of the signers of the writing in suit could have been sued, jointly or severally, as well as the maker of the notes.

Appellant next contends that inasmuch as, by the property settlement between her and her husband on October 16, 1930, confirmed by decree of court, her husband was given as his separate property all of the stock in the Utilities Co., only he and such separate property should be held liable on the notes and action and as a guarantor, and she should be released. It is asserted that, since she knew nothing of her husband's act in signing the written guaranty and did not learn of it until December, 1931, and that respondent, after the property settlement and divorce decree, accepted a renewal of the notes, such acceptance released appellant from any and all liability on the guaranty. Appellant concedes that a husband has a right to bind the community, and does so when he guarantees payment of corporate debts, the community being the owner of stock in the corporation. We have held that the guar-

anty of a corporate debt in which stock was owned as community property would be a community obligation. *Spokane State Bank v. Wells,* 139 Wash. 47, 245 Pac. 401.

It is also conceded that, irrespective of divorce proceedings, a husband and wife have the right to enter into a property settlement. This is granted by Rem. Comp. Stat., § 10572, provided, however, that settlement under the terms of this statute must be made "subject to existing equities." Appellant deduces from this, conceding that the settlement must have been made subject to the equity of respondent, namely, the guaranty of the two notes then in existence, that, when the settlement was made, the status of the community property was changed from community to separate, of which respondent had notice, and that all the corporate stock in the Utilities Co. had been set over to her husband. It is then insisted that, when respondent took a renewal note on the same day as the entry of the decree in the divorce case, and two weeks afterwards took a renewal of the second note, the renewals had the effect of releasing the liability of appellant.

*Lumbermans Bank & Trust Co. v. Sevier,* 149 Wash. 118, 270 Pac. 291, is cited by appellant to sustain this contention. That case involved indebtedness and notes owing by a co-partnership, secured by a written, continuing guaranty by one of the partners who had retired and had been succeeded by a new member. After the change in partnership, a new, or renewal, note of part of the indebtedness guaranteed was executed and delivered to the bank by the new partnership, each renewal after the entry of the new member having been treated as a payment of the previous note. We held that, on the retirement of one partner and entry of another, the indebtedness of the new partnership on

a renewal note paying an old debt would not be a continuing obligation of the old partnership.

The nature of the liabilities there involved and. the facts in the case make it inapplicable to this case. The same is true of the following cases cited by appellant: *Marston v. Rue,* 92 Wash. 129, 159 Pac. 111; *Schramm v. Steele,* 97 Wash. 309, 166 Pac. 634; *Parker v. Parker,* 121 Wash. 24, 207 Pac. 1062.

If appellant and her property, considered as community property, were bound by the original written instrument, as we must conclude it to be, the liability of appellant and her property manifestly continued until the obligations were satisfied up to $12,500. *Putnam v. Ewart,* 132 Wash. 573, 232 Pac. 277.

Whether appellant knew of the existence of the guaranty is immaterial. A bank from whom a married man, as agent of the community, borrows money for a community purpose and benefit, is under no obligation to inform the wife of its debtor of the existence of such obligation.

The next complaint of appellant is that the trial court allowed interest at the rate of eight per cent, amounting to $224.50 up to the date of the judgment, and then granted interest after judgment until paid at the rate of ten per cent per annum. It is asserted that this clearly compounds interest under our decisions in *Cullen v. Whitham,* 33 Wash. 366, 74 Pac. 581, and *Lacey & Co. v. McCarthy,* 168 Wash. 579, 13 P. (2d) 11.

In the cited cases, the trial court, in computing the total amount for which judgment was rendered, allowed interest on past due interest so that the total amount of the judgment included compound interest.

In this case, interest was not computed on past due interest. The written instruments sued on stipulated interest at eight per cent per annum from their dates

of execution, and the interest allowed by the trial court was computed from the date the last interest was paid. That amount, $224.58, was included in the judgment. The instruments sued on also allowed interest after judgment at ten per cent per annum. The judgment simply carried out the terms of the written instruments.

The last complaint of appellant is based upon that part of the judgment reading:

". . . said judgment being a lien against all community property owned by the said J. L. Johns and Leona M. Johns, his former wife, prior to their divorce."

Since this was the only matter involved in this suit on behalf of appellant, we consider the form of the judgment proper.

Under our community property system, and our statutes and decisions, we are obliged to conclude that the judgment was correct. It is therefore affirmed.

TOLMAN, C. J., MILLARD, MITCHELL, and PARKER, JJ., concur.