[No. 28733. Department Two. February 11, 1943.]

EMMA L. FARROW, *Appellant*, v. CAMERON W. OSTROM et al., *Respondents*.[1]

[1] Reported in 133 P. (2d) 974.

548

*Wright & Wright,* for appellant.

*Ballinger, Clark & Force,* for respondents.

ROBINSON, J.—Cameron W. Ostrom and May Clara Logan were married in August, 1937. In November, 1938, they contracted to purchase lot 9, block 46, Pike's second addition to Union City, Seattle, King county, Washington. The contract price was six thousand dollars, including the payment of a mortgage on the property. They obligated themselves to pay $29.92 per month to their vendor, and $30 per month to the mortgagee.

On August 3, 1940, Mrs. Farrow, the plaintiff in this action, was seriously injured by an automobile driven

by Cameron W. Ostrom. She brought suit against him and against the Ostrom marital community to recover damages. On March 27, 1941, a verdict was returned in her favor against Ostrom and against the community composed of himself and wife, in the sum of seventy-five hundred dollars. Judgment was entered on the verdict · on April 12, 1941. After its affirmance on appeal (*Farrow v. Ostrom*, 10 Wn. (2d) 666, 117 P. (2d) 963), a casualty company paid five thousand dollars on the judgment, and in November '1941, Mrs. Farrow brought this action in an attempt to collect the balance out of the real property contract interest above described.

In the meantime, the Ostrom community had been dissolved. On August 4, 1940, the next day after Mrs. Farrow was run down by the Ostrom car, Mrs. Ostrom left her husband, and, in September, began a divorce action against him. It had arrived at the interlocutory decree stage on the very day Mrs. Farrow's personal injury suit was set for trial, March 25, 1941. On that day, an interlocutory decree was entered, which granted to Mrs. Ostrom the community contract interest in the real estate above mentioned. On that same day, Ostrom, by deed, quitclaimed to May Clara Ostrom. This deed was recorded on March 26, 1941, while the case of Farrow v. Cameron W. Ostrom and the Ostrum community was on trial. On March 25th, Ostrom also gave Mrs. Ostrom a bill of sale to their household furniture.

The complaint in this action alleges, in substance, the recovery by the plaintiff of the seventy-five hundred dollar judgment against Cameron W. Ostrom and the Ostrom community; the receipt of the five thousand dollars from the casualty company; the plaintiff's inability to locate any separate property of Ostrom from which the balance could be satisfied; that Os-

trom had quitclaimed his interest in the real property to May Clara Ostrom while the trial of plaintiff's action for damages was in progress; that Mrs. Ostrom recorded the deed and claimed the property, and plaintiff could not safely levy upon it, although she had an equity in it by reason of the tort inflicted upon her by the community long prior to the conveyance to May Clara Ostrom. Plaintiff prayed that the conveyance to Mrs. Ostrom be declared a nullity in so far as plaintiff's rights were concerned. There was also a prayer for such other and further relief as might seem meet.

The Ostroms answered separately, but to the same general effect. They alleged affirmatively that Mrs. Ostrom left her husband on August 4, 1940 (which happens to have been the day after Mrs. Farrow was injured), and shortly afterwards brought suit for divorce; that an interlocutory decree was entered on March 25, 1941; that the decree awarded her the equity in the real estate contract and the household furniture, most of which she had owned before marriage; that Ostrom, pursuant to the decree, quitclaimed the real estate interest and gave her a bill of sale to the furniture on the day the decree was entered. They further alleged that Mrs. Ostrom took the conveyances in complete ignorance of the Farrow suit against the community (which was set for trial that very day), and that she did not know, until about the time this suit was brought, that such a suit had been prosecuted, or even that the accident on which it was based had occurred. All of these allegations were supported by the evidence given at the trial.

Before proceeding with the discussion of the questions presented by the appeal, it should be noted that, a few days before this action was begun, Mrs. Ostrom contracted to sell the contract interest ·in the real

estate for six thousand dollars. The matter was escrowed, but the transaction has not been consummated due to the *lis pendens* which accompanied this suit. Mrs. Ostrom had received $250 earnest money, which she still retains, and the escrow agent, after taking care of all other matters, including the mortgage, is holding for her account $1,616.14, both of which sums, the appellant claims, should be applied on her judgment against the Ostrom community.

The respondents, with considerable reason, regarded this case as the ordinary action to set aside a fraudulent conveyance. During the trial, they maintained that it could not possibly be fraudulent because Mrs. Ostrom knew nothing whatever about the Farrow judgment, or the action in which it was entered, or even that Mrs. Farrow had been injured, until long after she received the conveyance, and, also, because the conveyances were made upon the order of the court. The appellant's attorney contended that his client was merely attempting to enforce an equity in community property which flowed from a judgment against the community, relying, in part, on Rem. Rev. Stat., § 10572 [P. C. § 1443], and various decisions of this court, but principally that in the case of *Capital Nat. Bank v. Johns,* 170 Wash. 250, 16 P. (2d) 452. Respondents contended that, with the element of fraud out, the action should be dismissed as a collateral attack upon the interlocutory decree of divorce. They contended that, even if that were not true, then it was merely a situation where two persons claimed equities in some property arising out of tort claims, in which contest Mrs. Ostrom had priority over Mrs. Farrow.

In this connection, it is argued that the award of the property to Mrs. Ostrom in the interlocutory decree of divorce was really to satisfy her tort claims

against her husband. It is also argued that, in any event, Mrs. Ostrom would be entitled to retain the $375 which she furnished to make up the five hundred dollar down payment on the contract. The trial judge's view of the matter is shown by his oral decision made at the close of the case and after hearing argument by counsel:

"This property, by order of the court in the divorce court, was awarded to her free and clear from any claim on the part of the husband. That is a judgment, and if there is any fraud in connection with it, that must be attacked directly and not attacked collaterally, as in this action, because this is a collateral attack upon that."

It is true, as the court stated, that the property was awarded to Mrs. Ostrom "free and clear from any claim on the part of the husband," but what we are concerned with in this case is whether or not it was thereby awarded to her free and clear of any claim on the part of Mrs. Farrow.

An interlocutory decree of divorce is not an action to quiet title, and, even when such a decree awards a husband's interest in community property to his wife "as her sole and separate property," it purports to do no more than transfer such interest as he has. The plaintiff's attorney strongly maintained at the trial that he was not attacking the decree collaterally or otherwise. There was no reason why he should not acknowledge it good as against the world, since all that it purported to do was to make the property involved the sole and separate property of Mrs. Ostrom *in so far as Cameron W. Ostrom was concerned.* In entering the interlocutory decree, the court did not attempt to extinguish the plaintiff's equitable claim against the property. In fact, it was not even advised of its existence. Had the claim been called to the at-

tention of the court, it could have made no adverse ruling concerning it, since the claimant was not a party to the action.

The respondents contend that, if this court should reject the theory upon which the trial court dismissed the action, then this case should be treated as a priority contest between two tort claimants in which Mrs. Ostrom's claim was reduced to judgment by the decree in the divorce action on March 25, 1941, while Mrs. Farrow's claim, though established by jury verdict on March 27, 1941, was not actually reduced to judgment until the following April 12th. We are not impressed by this contention. To treat a divorce action as a tort action is to depart from reality. Furthermore, if we should so treat it, it would be somewhat incongruous to establish priority between the two claims. They are against different things. Mrs. Ostrom's claim relates to her husband's community interest in the property only, while Mrs. Farrow's relates not only to that, but also to the community interest of Mrs. Ostrom herself.

■ That the quitclaim deed given by Ostrom to his wife would not of itself cut off Mrs. Farrow's equitable claim is, we understand, admitted by the respondents; if not, it is established by Rem. Rev. Stat., § 10572 [P. C. § 1443].

The case gets down to the inquiry as to whether or not Mrs. Farrow was cut off by the entry of the interlocutory decree of divorce. As to that question, the appellant cites a number of cases, but relies mainly upon the case of *Capital Nat. Bank v. Johns*, 170 Wash. 250, 16 P. (2d) 452. A considerable portion of the respondents' briefs are devoted to an attempt to distinguish that case. It is said:

"There, the husband and wife had settled between

them and conveyed property, which appellant erroneously contends was done in the case at bar."

In this case, the deed passed, according to the evidence, an hour or two after the entry of the decree. It is not clear from the opinion in the *Johns* case that conveyances were given before the entry of the decree. But, assuming that they were, it is immaterial. In the *Johns* case, the court confirmed a settlement previously agreed upon by the parties, and the court in this case did likewise. We have, as an exhibit in the record, a transcript of the entire proceedings in the divorce action. We quote from finding of fact VIII:

"The court further finds that, since the rendition of the oral opinion following the close of the case, that an application was filed herein, on behalf of the plaintiff, asking for a modification of the oral pronouncement, and that said matter came on for argument before the court on Saturday, March 15, 1941, and that *since said date, the parties hereto have reached a settlement whereby the plaintiff is to have as her sole and separate property the real estate hereinabove described, . . .*" (Italics ours.)

In both cases, then, we have the court confirming a settlement agreed upon by the parties prior to the entry of the decree.

■ It is further said that the property in the *Johns* case was community, and not separate, property of the wife, as in the Ostrom case. The respondents assert that Mrs. Ostrom paid $975 of her separate funds into the property. The property was acquired during coverture, and Mrs. Ostrom paid $375 of the five hundred dollar down payment. It appears by the pleadings in the divorce case, as well as from the court's findings therein, that the sum of $475, which counsel uses to arrive at the $975 claimed, did not go into the property, but was loaned by Mrs. Ostrom to the Ostrom

Mushroom Company, a separate property of her husband. The additional $125 used to make up the $975 was, as we read page 53 of the record, but a part of the $475 already referred to. All payments, except the $375 furnished by Mrs. Ostrom toward the down payment, were made out of community funds. From the legal point of view, the Ostroms' contract interest in the property was a community interest.

In addition to the claimed distinction that there were no conflicting tort claims involved in the *Johns* case, and that there were in this case, a matter which we have already disposed of, there are one or two other distinctions suggested in which we find no merit. There is, however, this striking similarity in the two cases: The community liability which was enforced against Mrs. Johns arose out of a guaranty, signed by her husband solely, during the existence of their marriage and of which she had no knowledge whatsoever until long after the divorce decree was entered. In this case, Mrs. Ostrom had no knowledge that her husband had injured Mrs. Farrow until long after her divorce decree was entered.

This action is wholly equitable in its nature. In fact, it is concerned wholly with equities, for no party to it ever had legal title to the property involved. Mrs. Ostrom paid $179.86 on the contract and $180 on the mortgage after the entry of the interlocutory decree. We think that she should be allowed credit for these sums. We think that she should also be allowed credit as to the $375 which she contributed to the down payment on the real estate contract.

In coming to that conclusion, we are not unmindful of the fact that we have already declared that the contract interest was, from the legal point of view, community property, but, as is developed by both the majority and minority opinions in *Conley v. Moe*, 7

Wn. (2d) 355, 110 P. (2d) 172, 133 A. L. R. 1089, equity will, in order to do justice in certain cases, impress a lien on separate property in favor of a community which has enhanced its value, as was done in that case, or on community property in favor of one who is clearly shown to have contributed separate funds to its acquisition or to the enhancement of its value thereafter.

It is the holding of the court that the plaintiff—appellant—is entitled to the $1,616.14 in the hands of the escrow agent, plus the $250 earnest money received and retained by Mrs. Ostrom, less the sums of $179.86, $180, and $375 referred to in the preceding paragraph, or a net sum of $1,121.28, plus the costs of appellant in this court, and such costs, if any, as she may be entitled to recover in the trial court.

The judgment and decree is reversed, and the cause remanded for the entry of a new judgment in conformity herewith.

SIMPSON, C. J., BEALS, and BLAKE, JJ., concur.