[No. 36735. Department One. January 2, 1964.]

DIZARD & GETTY, *Appellant,* v. FRANK DAMSON *et al., Respondents.**

*Reported in 387 P. (2d) 964.

*Allen, DeGarmo & Leedy,* by *Hugh E. Pickel,* for appellant.

*Whitmore, Vinton, Powers & Manion,* for respondent.

DAWSON, J.†—Frank and Alice Damson, during the course of their marriage, developed a successful and prosperous construction business operated by Mr. Damson. Substantial community property accumulated. This stable period came to an end, when Mrs. Damson learned that her husband was unfaithful, and was supporting and maintaining a home for another woman. Whereupon, she moved from the family home and, in January, 1960, instituted an action for separate maintenance. By amendment in February, 1961, she sought a divorce. She was granted a divorce by decree dated June 22, 1961. The court divided the community property between them.

William H. Dizard, president of plaintiff corporation, is a masonry contractor. During the summer and fall of 1960, plaintiff corporation, as a subcontractor, completed certain masonry and ceramic work on several projects undertaken by Frank Damson as general contractor. This action was commenced on April 28, 1961 to recover from Frank Damson, and the marital community, an unpaid balance of $9,315.50 on the subcontracts. Plaintiff attached several properties of the community, including four parcels of real estate, which were subsequently awarded to Alice Damson by the divorce court. After divorce, she was joined as an additional party defendant and resisted plaintiff's claim.

†Judge Dawson is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution

Judgment was entered against defendant Frank Damson, in his individual capacity only, and the attachment was dissolved as to the realty awarded to her. Plaintiff appeals from this disposition of the issues.

From collection procedures, $7,339.53 in partial satisfaction of the judgment have been received, so that, as of September 14, 1962, the deficiency was $2,719.38.

We summarize appellant's assignments of error. (1) Appellant's claim is a community obligation of Frank Damson and Alice Damson, his wife, and its posture was not altered by the divorce. (2) Appellant may pursue all community property regardless of the disposition by the divorce court.

■ Appellant's position is anchored to the axiomatic rule that when the husband, as manager of the community property, incurs a debt, it is presumptively a community obligation. *Oregon Imp. Co. v. Sagmeister,* 4 Wash. 710, 30 Pac. 1058; *Fies v. Storey,* 37 Wn. (2d) 105, 221 P. (2d) 1031. This presumption may be rebutted only by clear and convincing evidence. *Auernheimer v. Gardner,* 177 Wash. 158, 31 P. (2d) 515; *Beyers v. Moore,* 45 Wn. (2d) 68, 272 P. (2d) 626.

Respondent Alice Damson contends that when she and Mr. Damson separated, due to his meretricious relationship with another woman, only the shell of a marriage remained, and the community property laws do not apply to a defunct marriage such as this, nor to appellant's claim.

The trial court found:

" . . . that the defendant, Frank Damson, had so violated his obligations to the marital community that he had no authority to act for the marital community, and there was no family relationship, but only the shell of a marriage; that the contracts entered into between the plaintiff and defendant, Frank Damson, were the separate obligations of Frank Damson, and not obligations of the marital community composed of the defendants."

■ We agree with respondent to the limited extent that the community property laws will not be applied to a defunct marriage, unless the ends of justice will be served

thereby. But whether the marriage may be defined as defunct must depend upon the particular facts and circumstances of each case. *Togliatti v. Robertson,* 29 Wn. (2d) 844, 190 P. (2d) 575.

Respondent has cited numerous cases as supporting the judgment. However, when applied to the instant case, we find no analogy between the factual situations. *Lanigan v. Miles,* 102 Wash. 82, 172 Pac. 894, did not encompass a broken community relationship; however, the following cautionary words are apropos (p. 86):

"Reference to the opinions of this court will show that we have built up two lines of decisions covering the right of one or the other of married persons to assert a separate interest in property. In the one line, the court has had to do with the claims of creditors or the interests of third persons having some tangible equity in or lien upon the property sought to be recovered or levied upon. In the other line, the court has had to deal with husband and wife as free contracting agents, unhampered and unhindered by the claims of creditors or by any one having direct interest in, or lien upon, the property. In all of the first line of cases, the court has had to deal with circumstances which, if unexplained by testimony at once clear and convincing, would amount to badges of fraud. In the second line of cases, it appears that a husband and wife may freely contract, or give one to the other, and thus provide for the holding of property then or thereafter to be acquired as a separate estate."

No useful purpose is served by a case comparison, for we think several pertinent reasons impel the conclusion that, even though the community relationship had ended, the community property laws cannot be disregarded in the case at bar.

██ (1) Mr. Damson did not lose his statutory authority to act for the community in the absence of a showing that he was disloyal to the community business interests, or was defrauding the community. *Marston v. Rue,* 92 Wash. 129, 159 Pac. 111; *Wampler v. Beinert,* 125 Wash. 494, 216 Pac. 855. This burden of proof was upon respondent. *Marston v. Rue, supra.* We find no factual basis for

the trial court's conclusion that Mr. Damson so violated his obligation to the community that he had lost his authority to act for its benefit. There was no showing that the benefit from appellant's performance was diverted from the community to his own or his paramour's benefit. Nor was there a showing that the community was deprived of its assets, so as to bring it within the rule of the above cases.

▪ (2) After their separation, during the pendency of the separate maintenance and the subsequent divorce action, prior to the decree, Mrs. Damson expressly authorized her husband to continue as manager of the community business, and, by implication, to incur obligations pursuant to such authority. She also secured court orders which permitted continuation of the business under Mr. Damson's management. In that sense, we are dealing not with presumptive powers, but rather with the express or implied authority to enhance the community estate by carrying on the community business. It is inconceivable that respondent may authorize the husband to carry on the community business, create a potential source of assets, ultimately share in these assets, and yet be immune from the claims of creditors who contribute to the accumulations, if any. *Oregon Imp. Co. v. Sagmeister, supra.* Whether assets from these contracts actually resulted in a benefit to the community does not appear, but we think determination of that fact is immaterial. *Hanley v. Most,* 9 Wn. (2d) 429, 115 P. (2d) 933; *Page v. Prudential Life Ins. Co.,* 12 Wn. (2d) 101, 120 P. (2d) 527.

(3) Respondent has suggested that when Mr. Damson's acts of infidelity led to a permanent separation, all business assets (physical assets of substantial value and accounts receivable in the approximate amount of $77,000) became his separate property, subject, of course, to an accounting in the divorce court. This position, while expedient, is not logical, for it offers no solid ground upon which to stand. To convert community business assets into separate property of the spouse at fault, without agreement or operation of law, seems an intolerable result.

"The very nature of the property acquired during coverture . . . clearly indicates that community and individual property must retain its status and remain intact until such time as the marital relation shall cease to exist or the parties, themselves, voluntarily enter into proper agreement for the allocation of their properties, community and separate, upon some other basis." *Cohn v. Cohn,* 4 Wn. (2d) 322, 326, 103 P. (2d) 366.

██ It is not suggested that a third party may extend credit with impunity. He cannot rely upon his blindness to the facts, for we conceive situations where a different result would obtain. However, appellant's claim is predicated upon a debt incurred while the husband was managing the community business with authority. Under these circumstances, the presumption of community liability was not overcome by clear and convincing evidence. It must follow that the deficiency may be satisfied from the community property of the parties, including the property awarded and distributed to Alice Damson by the divorce decree. *Capital Nat. Bank of Olympia v. Johns,* 170 Wash. 250, 16 P. (2d) 452; *Farrow v. Ostrom,* 16 Wn. (2d) 547, 133 P. (2d) 974; *Hanson v. Hanson,* 55 Wn. (2d) 884, 350 P. (2d) 859; *United States v. Elfer,* 246 F. (2d) 941.

In view of our conclusions, the judgment must be reversed.

OTT, C. J., HILL, ROSELLINI, and HALE, JJ., concur.