[No. 46806-1. En Banc. July 23, 1981.]

HARRY WATTERS, *Appellant,* v. CHARLES DOUD, ET AL, *Respondents.*

*Hubbard & Burns, Inc., P.S.,* by *David R. Meyer,* for appellant.

*John A. Tidwell,* for respondents.

UTTER, J.—Harry Watters appeals from a permanent injunction which limited the property upon which he could levy to satisfy a judgment entered against the community of Judith and Charles Doud. As to the Douds' family home, the injunction limited Watters to the equity in the home as of the date of the Douds' divorce. Charles Doud, on the other hand, cross–appeals the trial court's ruling that the declaration of homestead exempted only the postdivorce equity. We affirm the issuance of the injunction and, in light of the facts of this case, find it unnecessary to address the homestead issue.

This appeal presents two issues. The first is whether after a marriage dissolution, previously community held assets are fully available, including their postdivorce appreciated value, to satisfy debts incurred by the former marital community. The second is whether a declaration of homestead protects only the equity acquired subsequent to the divorce.

During the marriage of Charles and Judith Doud, Charles

signed a promissory note, payable to Harry Watters, on behalf of himself and the marital community. When the marriage dissolved, the property settlement provided that Charles should pay as well as defend his wife in any action taken upon the Watters' debt of approximately $15,000. The property settlement also transferred to Judith all of the community interest in their family home.

Until mid–1976, Mr. Doud complied with the terms of the Watters' note. But his subsequent delinquency resulted in a judgment for the unpaid balance, interest, and attorney fees against himself, individually, and against the community of Judith and Charles. To satisfy that judgment, Watters requested a writ of execution for the family home. A declaration of homestead, however, had been filed before his judgment and Mr. Doud sought a permanent injunction to prevent the execution.

The trial court agreed with Mr. Doud, in part. It entered a permanent injunction limiting execution to the community's net equity in the residence as of the date of the divorce. It further held that the homestead exemption applied only to the separate property interest in the home, which it characterized as the postdivorce equity.

I

Watters argues that interspousal transfers of community property pursuant to a divorce decree are governed by RCW 26.16.050. That statute provides:

A husband may give, grant, sell or convey directly to his wife, and a wife may give, grant, sell or convey directly to her husband his or her community right, title, interest or estate in all or any portion of their community real property: And every deed made from husband to wife, or from wife to husband, shall operate to divest the real estate therein recited from any or every claim or demand as community property and shall vest the same in the grantee as separate property . . . *Provided, however,* That the conveyances or transfers hereby authorized shall not affect any existing equity in favor of creditors of the grantor at the time of such transfer, gift or conveyance.

He cites our cases of *Capital Nat'l Bank v. Johns,* 170 Wash. 250, 16 P.2d 452 (1932); *Farrow v. Ostrom,* 16 Wn.2d 547, 133 P.2d 974 (1943); *Baffin Land Corp. v. Monticello Motor Inn, Inc.,* 70 Wn.2d 893, 425 P.2d 623 (1967); and *Dizard & Getty v. Damson,* 63 Wn.2d 526, 387 P.2d 964 (1964), as making this statute applicable to property settlement agreements. He further contends, on the basis of the statute, that the full value of any realty held by an ex-spouse, but which was formerly owned by the community, can be levied upon for community debts.

The Douds, on the other hand, assert that the statute does not govern and that we should apply the rule established in California. *See, e.g., Harley v. Whitmore,* 242 Cal. App. 2d 461, 51 Cal. Rptr. 468 (1966); *Ryan v. Souza,* 155 Cal. App. 2d 213, 317 P.2d 655 (1957). These California cases concluded that since all property becomes separate upon divorce, all net equity arising thereafter must be separate in character and thus is unavailable to community creditors.

We have never specifically determined whether postdivorce appreciation, like a separate property contribution, is exempt from community creditors. In *Farrow,* we held that all separate property contributions to an asset previously owned by the marital community, and which were made after the divorce, are not subject to preexisting community debts. In neither *Farrow* nor any of our other cases, however, has there been any evidence of postdivorce appreciation. Consequently, the cases have simply, and rather broadly, stated that any realty held by an ex–spouse and which was formerly owned by the community can be levied upon for the community's debts. *See, e.g., Baffin, supra; Dizard, supra; Farrow, supra; Johns, supra; McLean v. Burginger,* 100 Wash. 570, 171 P. 518 (1918).

RCW 26.16.050, by its express terms, does not suggest that it applies to realty divided upon divorce. And contrary to Watters' assertion, none of our cases have expressly applied it in the divorce area. The cases have only ruled, without any discussion, that community creditors can levy

upon former community assets. *Farrow* appears to have reached that result as a matter of equity. The other cases apparently applied the common law principles surrounding the application of RCW 26.16.050 to interspousal transfers during marriage. The case law therefore provides little guidance in answering the question presented by this case.

Similarly, the California courts, the only courts to have specifically addressed this issue, have not provided any reasoned discussion for their results. *See Harley, supra; Ryan, supra.* The facts of those cases, however, are very similar to those here. In *Harley,* for example, a community creditor attempted to levy against a previously community held asset. At the time of the divorce, the debt had not been reduced to judgment nor did it constitute a lien against the community asset. On those facts, the court ruled:

> [T]he . . . judgment constitutes a lien against the property . . . to the extent that said judgment does not exceed the equity which plaintiff and her husband had in the property on the date the interlocutory decree of divorce was entered.

*Harley,* at 471. *Accord, Ryan,* at 216.

We believe the California rule is preferable on the basis of equity and generally applicable community property principles. All property upon divorce has consistently been held to become separate in character. *See, e.g., Yeats v. Estate of Yeats,* 90 Wn.2d 201, 580 P.2d 617 (1978); *Sears v. Rusden,* 39 Wn.2d 412, 235 P.2d 819 (1951); *Ambrose v. Moore,* 46 Wash. 463, 90 P. 588 (1907); Cross, *The Community Property Law in Washington,* 49 Wash. L. Rev. 729, 818 (1974). Our cases have also exempted separate property and its appreciation from the claims of community creditors. *Jacobs v. Hoitt,* 119 Wash. 283, 205 P. 414 (1922); *In re Marriage of Jacobs,* 20 Wn. App. 272, 579 P.2d 1023 (1978). Following these precepts, the divorce and property settlement converted the Douds' home and its subsequent appreciation into Judith's separate property.

Although we have departed from those traditional prin-

ciples in *Farrow* and its progeny, we do not believe that any further departure is necessary. Creditors are adequately protected without making postdivorce equity available to them. *Farrow* and other cases permit them to execute upon formerly community held assets to the extent of the community's net equity. Creditors can also, using traditional remedies, have a property settlement agreement set aside by proving the divorce was an attempt to defraud them. *See Klosterman v. Harrington,* 11 Wash. 138, 39 P. 376 (1895); *Frederick v. Shorey,* 4 Wash. 75, 29 P. 766 (1892); *Rainier Nat'l Bank v. McCracken,* 26 Wn. App. 498, 615 P.2d 469 (1980).

Furthermore, from the debtors' perspective, allowing creditors to reach all appreciation would be unduly harsh. It would penalize the contributing ex–spouse in that she or he would be deprived of any return on the contributions. While that spouse does have a right to reimbursement for the payment of any community obligation, *Hanson v. Hanson,* 55 Wn.2d 884, 350 P.2d 859 (1960); *Proff v. Maley,* 14 Wn.2d 287, 128 P.2d 330 (1942), the noncontributing spouse often lacks the necessary solvency to make that right meaningful.

Our ruling will not frustrate any legitimate expectations. It will, to a degree, affect creditors in the same way as when death terminates the marriage. When death terminates the marriage, creditors must file their claims within a limited period of time and those claims are satisfied only to the extent of the value of the property at that time. RCW 11.40; *see generally* W. DeFuniak & M. Vaughn, *Community Property* §§ 210, 211 (2d ed. 1971). They are not entitled to execute upon the appreciated value of the distributed assets years after the death.

There is no significant reason to treat creditors differently because the marriage is terminated by divorce rather than death. Dissolution is like death in that both end the marriage and convert all assets into separate property. In each, there is need for certainty—to ascertain and to fix the burdens attending the disbursed property. While we do not

go so far as to require a final accounting upon divorce, as in death, we do believe, in light of the equities and the community property principles, that creditors should be limited to the net equity as of divorce. We therefore conclude that community debts may be satisfied from the community's net equity, as measured at the time of divorce, in any property held by either spouse.

## II

By affirming the trial court on the first issue, we need not resolve the homestead problem. Doud concedes that a favorable ruling on the first issue makes determining the second unnecessary. It appears that the postdivorce net equity far exceeds any possible homestead exemption, whether it be the current $20,000 or some smaller amount as provided in earlier statutes. The applicability of any homestead provision is thus immaterial.

The trial court is affirmed insofar as it limited execution to the net equity as of the time of the divorce.

BRACHTENBACH, C.J., and ROSELLINI, STAFFORD, DOLLIVER, HICKS, WILLIAMS, DORE, and DIMMICK, JJ., concur.

Reconsideration denied October 23, 1981.