# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| ANDREW JAMES CLAYTON, | ) | No. 75010-1-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| DOUGLAS MECKLEM WILSON, | ) | |
| Defendant, | ) | |
| MARY KAY WILSON, | ) | |
| Appellant. | ) | FILED: April 17, 2017 |

APPELWICK, J. — Clayton sought to execute his judgment against three lots owned by Wilson which were contiguous to Wilson's residence. Wilson argues that the three parcels are part of her homestead and cannot be sold on the terms authorized by the court. She also argues that she is entitled to her separate contributions to the property and to appreciation that has accrued since Clayton obtained a judgment against the community property. We conclude that the contiguous parcels are not part of Wilson's homestead. We affirm that the execution sale may be held, but remand for the trial court to determine prior to

the sale the value of Wilson's separate property interest in the proceeds that is not subject to the judgment.

## FACTS

Mary Kay Wilson's former husband sexually abused Andrew Clayton for many years. The Wilsons sought dissolution of their marriage after the sexual abuse came to light in 2002. In February 2006, Clayton obtained a civil judgment for damages against the Wilsons, jointly and severally.

Prior to Clayton obtaining this judgment against the Wilsons, the Wilsons attempted to transfer nearly all of Mr. Wilson's personal and real property community assets to Ms. Wilson as part of the dissolution. The trial court found this transfer fraudulent. And, as a result, the court voided the transfer and enjoined the Wilsons from further disposing of or encumbering the former community property.

On appeal, this court held that the judgment was enforceable against the marital community, that Wilson's[1] liability extends to only the former community property, and that the property transfer was indeed fraudulent. Clayton v. Wilson, 145 Wn. App. 86, 106, 186 P.3d 348 (2008), aff'd, 168 Wn.2d 57, 72, 227 P.3d 278 (2010).

After the property transfer was deemed fraudulent, the Wilsons then owned their real property as tenants in common. That real property included four contiguous parcels in Kenmore, one of which Wilson now resides on. Wilson's

---

[1] When used in this opinion, "Wilson" refers to Mary Kay Wilson individually, not her former husband Douglas Wilson.

mother used to live on one of the parcels, but Wilson claims that residence is now uninhabitable. Another family used to live on another one of the parcels, but Wilson claims that residence is also uninhabitable.

In December 2015, Clayton sought and obtained a writ of execution against the three parcels that Wilson does not reside on. Clayton moved for an order authorizing a sheriff's sale pursuant to the writ. The trial court granted the motion, and authorized the sheriff to proceed with a sale of the three parcels.

Wilson appealed, and a stay of the sale was granted pending this appeal.

## DISCUSSION

Wilson makes three arguments on appeal. First, she argues that the three parcels at issue are subject to Washington's homestead exemption. Second, she argues that she is entitled to her separate contributions to the property and appreciation that has accrued since Clayton obtained a judgment against the community property. Finally, she argues for the first time on appeal that the trial court's writ of execution was issued in error.

### I. Homestead Exemption

Wilson argues that the trial court erred by not deeming the three parcels at issue as subject to the homestead exemption. She concedes that she resides on only the fourth parcel, and two of the three bordering parcels have been occupied by others in the past. But, she claims that the three parcels at issue are subject

to the exemption because they are contiguous with the fourth parcel that she resides on.[2]

Under RCW 6.13.010, property qualifies as a homestead if the owners use the property and the surrounding land as their primary residence:

> [T]he homestead consists of the dwelling house . . . in which the owner resides or intends to reside, with appurtenant buildings, and the land on which the same are situated and by which the same are surrounded, or improved or unimproved land owned with the intention of placing a house or mobile home thereon and residing thereon.

---

[2] Wilson has filed a motion to supplement the record. The motion first seeks to correct an apparent misstatement that she had previously filed a declaration of homestead, and named only the parcel where she resides as her homestead. She now claims to never have filed this declaration. The motion also seeks to introduce evidence that Clayton recorded certified copies of judgments against the three parcels at issue here. Wilson claims this is relevant because a party must record a certified copy of a judgment against real property if the creditor seeks a lien on homestead property.

A motion to supplement the record should be granted if six requirements are met. RAP 9.11. Those requirements are:

> (1) additional proof of facts is needed to fairly resolve the issues on review, (2) the additional evidence would probably change the decision being reviewed, (3) it is equitable to excuse a party's failure to present the evidence to the trial court, (4) the remedy available to a party through postjudgment motions in the trial court is inadequate or unnecessarily expensive, (5) the appellate court remedy of granting a new trial is inadequate or unnecessarily expensive, and (6) it would be inequitable to decide the case solely on the evidence already taken in the trial court.

Id. The premise of Wilson's motion is that the parties' own view of whether the subject parcels are a homestead is a factor that the court would consider. However, the parties' own respective views on the exemption do not go to any of the six supplementation factors. The additional evidence is (1) not necessary to fairly resolve the issue and (2) probably would not change the decision being reviewed. We therefore deny the motion to supplement the record.

4

The homestead exemption protects up to the amount of the land's value or $125,000, whichever is less, from the reach of creditors. RCW 6.13.030. In other words, a creditor's lien on homestead property is for only an amount in excess of the homestead exemption. In re Trustee's Sale of the Real Property of Upton, 102 Wn. App. 220, 223, 6 P.3d 1231 (2000).

Courts favor the homestead act, ch. 6.13 RCW, and construe it liberally to promote its purpose of protecting family homes. In re Dependancy of Schermer, 161 Wn.2d 927, 953, 169 P.3d 452 (2007). Whether the homestead act exempts property surrounding a parcel where a residence is located is a matter of statutory interpretation, which is reviewed de novo. In re Marriage of Baker, 149 Wn. App. 208, 210-11, 202 P.3d 983 (2009).

Wilson's relies heavily on Baker. Like this case, Baker addressed whether contiguous parcels were exempt as part of a homestead. Id. at 210. The case involved five contiguous parcels that were originally Mr. Baker's parents' property. Id. The parcels were all deeded to Mr. Baker as his separate property during the dissolution. Id. Mrs. Wilson sought a writ of execution against another one of the five parcels, parcel B. Id. Mr. Baker claimed that parcel B was part of his homestead. Id. With little guidance as to the extent of its holding, the court found that parcel B was subject to the homestead exemption. Id. at 212. The court stressed that, based on the statutory language, "the use and enjoyment of a residence includes the surrounding property. They, together, make up the homestead." Id. The court reasoned that its holding was in line with "the sanctity

5

with which the legislature has attempted to surround and protect homestead rights." Id.

The Baker decision relied on two older cases that support the principle that multiple parcels in a single tract may collectively be deemed a homestead. Id. at 211-12. In Morse v. Morris, 57 Wash. 43, 43-44, 106 P. 468 (1910), Morse owned two blocks of land, block 7 and block 8. Id. at 44. "Plaintiffs' dwelling, wood sheds, and outbuildings were built on the lots in block 8. The lots in block 7 were used as a garden, orchard, chicken run, etc. The two blocks were separated by an alley." Id. The court found that the parcels on block 7 were part of the homestead, even though the dwelling was on block 8. Id. at 47. The court reasoned that the homestead exemption should include adjacent parcels if those parcels are used to support the residence on the primary parcel:

> It represents the dwelling house, at which the family resides, with the usual and customary appurtenances, including outbuildings of every kind necessary or convenient for family use and lands used for the purposes thereof. If situated in the country, it may include a garden or farm. If situated in a city or town, it may include one or more lots, or one or more blocks.

Id. at 46.

Similarly, in In re Murphy's Estate, 46 Wash. 574, 575-76, 90 P. 916 (1907), the Supreme Court addressed a scenario where a widow sought a homestead exemption for property consisting of four contiguous parcels. The tract contained a total of two buildings. Id. at 577. Prior to the husband's death, the widow had had not abandond the property due to the husband's abuse of the wife. The husband continued to live in the primary dwelling. Id. at 577. The

6

parcels were bought at one time for the purposes of having a home. Id. The two structures were separated by a fence. Id. One of the structures was "a mere shack." Id. Because the lots were purchased for a home in a single transaction and the wife did not leave the property voluntarily, the court did not find any error in the trial court's decision to apply homestead protection to the entire property. Id. at 577-78.

Under Baker, the homestead protection can apply to contiguous parcels. See id. But, examining the case law that Baker relied upon, the mere fact that parcels are contiguous does not render them per se part of the homestead. Instead, Baker, Morse, and Murphy's Estate dictate that if the household uses the surrounding parcels for purposes related to the use of the primary residence, the surrounding parcels may be protected as homestead. Baker, 149 Wn. App. at 212; Morse, 57 Wash. at 46; Murphy's Estate, 46 Wash. at 577-78. Here, no evidence shows that any of the parcels were used for the enjoyment of Wilson's homestead. Rather, two of the three contiguous parcels contain independent residences, and Wilson concedes that those separate residences have been occupied by others in the past. Wilson's claim is based solely on the contiguous location, not use. Even construing RCW 6.13.010 liberally, the statute does not contemplate that contiguous location alone is sufficient to establish that the homestead applies. The trial court correctly concluded the homestead did not apply to the three lots and properly authorized the execution sale.

II. Separate Property

Wilson also argues that the trial court erred, because it should have awarded her an equitable lien for the appreciation of and improvements to the property following her dissolution. In other words, she argues that the trial court should have granted her an offset from the proceeds of the impending sale,[3] because Washington law allows Clayton to claim only the portion of the property that existed at the time of dissolution.

An equitable lien will be enforced in equity against specific property, though there is no valid lien at law. Sorenson v. Pyeatt, 158 Wn.2d 523, 530 n.9, 146 P.3d 1172 (2006). Equity imposes liens either to carry out the intention of the parties to give as security or to prevent injustice, regardless of the intent. Id. Equitable liens are an equitable remedy and may arise from any number of facts and circumstances. Id. at 535. This court reviews a trial court's decision to grant or deny an equitable lien for abuse of discretion. In re Marriage of Marshall, 86 Wn. App. 878, 882, 940 P.2d 283 (1997).

Wilson cites Farrow v. Ostrom, 16 Wn.2d 547, 555, 133 P.2d 974 (1943) in support of her argument that she is entitled to an equitable lien. Mr. Ostrom crashed into Farrow while driving. Id. at 548-49. Farrow obtained a judgment against Ostrom's martial community. Id. at 549. Prior to the judgment being entered, the Ostroms divorced. Id. Ms. Ostrom received real estate as a result of the divorce. Id. at 549. She sold the real estate, but the purchase money was held in escrow pending the collection matter. Id. at 550-51. The court held that

---

[3] The order authorizing sale was stayed, and a sale has therefore not yet taken place.

Farrow was entitled to the money held in the escrow account to satisfy her damages. Id. at 556. But, the court also held that Ms. Ostrom was entitled to an offset for payments she personally made towards the contract for deed, and for mortgage payments that she personally made following the entry of the decree. Id.

Watters v. Doud, 95 Wn.2d 835, 840, 631 P.2d 369 (1981) extends the reasoning in Farrow to appreciation following dissolution. In that case, a husband incurred a debt while a couple was married. Id. at 836-37. The property settlement in their dissolution gave their family home to the wife. Id. at 837. The creditor sought to levy against the family home. Id. The specific issue was "whether post-divorce appreciation, like a separate property contribution, is exempt from community creditors." Id. at 838. In keeping with Farrow, the Watters court concluded that the nonobligated spouse's share of postdissolution appreciation was out of the creditor's reach:

> [T]he divorce and property settlement converted the Douds' home and its subsequent appreciation into Judith's separate property.
>
> . . . Creditors are adequately protected without making postdivorce equity available to them. Farrow and other cases permit them to execute upon formerly community held assets to the extent of the community's net equity.

Id. at 839-40. The court went on to reason that the alternative would create an unwarranted burden on the nonobligated spouse: "[F]rom the debtors' perspective, allowing creditors to reach all appreciation would be unduly harsh. It would penalize the contributing ex-spouse in that he or she would be deprived of any return on the contributions." Id. at 840.

Clayton argues that, irrespective of the case law, any equitable lien that Wilson claims is prohibited by the judgment in the prior case. Specifically, that judgment stated that "Douglas Wilson and Defendant Mary Kay Wilson are enjoined from further disposition or encumbrance of any assets distributed as part of their community property."

It is true that a lien is an encumbrance upon property. Sullins v. Sullins, 65 Wn.2d 283, 285, 396 P.2d 886 (1964). But, the trial court's prohibition on encumbrances was intended to prevent cloud on title that would interfere with Clayton's ability to levy against the property (such as the prior fraudulent transfer). Wilson's lien is not a lien against the community property itself. She is asserting an equitable lien against the proceeds of the sale of the property. The trial court's order did not address this issue explicitly. Nothing in the record suggests that the order was intended to prevent Wilson from recovering for the reasonable value of her separate contributions necessary to preserve the property from tax foreclosure, to maintain the value of the property, or that enhanced the value of the property without third party encumbrance. The equitable lien at issue here was not barred by the prior judgment. The trial court's ruling contravened our Supreme Court's reasoning that in light of the equities and the community property principles, creditors are limited to the net equity as of dissolution. Watters, 95 Wn.2d at 840-41.[4] This was an abuse of discretion.

---

[4] Clayton also contends that, even if Wilson has an equitable lien, we should nevertheless affirm because that lien is subordinate to Clayton's interest. In other words, Wilson may make a claim for contributions only against the

10

On remand the trial court should determine the amount of an equitable lien on proceeds of the sale that encompasses Wilson's separate property interest arising postdissolution from: her contributions to the property that enhanced its value; expenditures she made that preserved the property's availability to Clayton, such as tax payments[5]; and to offset for appreciation. Because the lien amount may affect bidding at the sale, the lien amount should be established prior to the sale.

## III. Sufficiency of Writ of Execution

Wilson also argues that the writ of execution is invalid because Clayton's supporting declaration did not conform to the requirements of RCW 6.17.100, and the trial court improperly extended the writ. But, she did not make this argument below. The allegedly deficient writ was filed on December 10, 2015. Wilson filed her response to Clayton's motion for an order directing sale of property on March 9, 2016, without making any argument related to RCW 6.17.100. She therefore had ample time to include this argument in her response at the trial court, but did not. Under RAP 2.5(a), an appellate court may refuse to

---

excess proceeds of a sale, if any excess proceeds result. And, she must wait until the sheriff's sale to make that claim. But, this is irreconcilable with our analysis. Clayton has no right to postdissolution improvements and appreciation in the first place, because they are Wilson's separate property.

[5] Under RCW 84.60.010, a tax lien on real or personal property "has priority to and must be fully paid and satisfied before any recognizance, mortgage, judgment, debt, obligation, or responsibility" is paid. Therefore, by paying property taxes, Wilson effectively preserved the property so that Clayton's interest was not involuntarily encumbered by a tax lien that would have taken priority.

review any claim of error that was not raised in the trial court. We therefore decline to address this argument.

We affirm the trial court's determination that the three surrounding parcels are not part of Wilson's homestead and that the execution sale should proceed. But, we remand for the trial court to determine the value of Wilson's equitable lien against the proceeds of any sale prior to allowing the sale to proceed.

WE CONCUR: